D4JFTOKC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

        v.                          13 CR 268 (JMF)

ALIMZHAN TOKHTAKHOUNOV, et
al.,

           Defendants.
------------------------------x
                        New York, N.Y.
                        April 19, 2013
                        1:30 p.m.

Before:
               HON. JESSE M. FURMAN,

                        District Judge

               APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
HARRIS FISCHMAN
BENJAMIN NAFTALIS
     Assistant United States Attorney

MICHAEL FINEMAN, ESQ.
     Attorney for Defendant V. Trincher

JONATHAN BACH, ESQ.
     Attorney for Defendant Golubchik

HARVEY SERNOVITZ, ESQ.
     Attorney for Defendant Sall

JEFFREY CHABROWE, ESQ.
     Attorney for Defendant Greenberg

DAVID Z. CHESNOFF, ESQ.
     Attorney for Defendant I. Trincher

BENJAMIN BRAFMAN, ESQ.
PAUL SHECTIMAN, ESQ.
     Attorneys for Defendant Nahmad

D4JFTOKC

1                          APPEARANCES (Cont'd)

2    MICHAEL GILBERT, ESQ.
     EARL NEMSER, ESQ.
3         Attorneys for Defendant Hanson

4    ROBERT SHEAHEN, ESQ.
          Attorney for Defendant Siegel
5
     DAVID SIEGAL, ESQ.
6         Attorney for Defendant J. Hirsch

7    ANTHONY CARONNA, ESQ.
          Attorney for Defendant Azen
8
     JOHN McGRATH, ESQ.
9         Attorney for Defendant McCalmont

10   JEREMY SCHNEIDER, ESQ.
          Attorney for Defendant Druzhinsky
11
     PETER J. SCUDEVI, ESQ.
12        Attorney for Defendant Zaverukha

13   ANDREW FRISCH, ESQ.
          Attorney for Defendant Katchaloff
14
     MICHAEL ELBAZ, ESQ.
15        Attorney for Defendant Shteyngrob

16   RAYMOND GRANGER, ESQ.
          Attorney for Defendant Rozenfeld
17
     BRUCE WENGER, ESQ.
18   JOHN ARKA, ESQ.
          Attorneys for Defendant Skyllas
19
     KERRY KATSORHIS, ESQ.
20        Attorney for Defendant Uy

21   CRAIG CARPINTO, ESQ.
          Attorney for Defendant N. Hirsch
22

23   CHARLES CLAYMAY, ESQ.
          Attorney for Defendant Zuriff
24

25

D4JFTOKC

                        APPEARANCES (Cont'd)

ROBERT KATZBERG, ESQ.
     Attorney for Defendant Oratz

JAY SCHWITZMAN, ESQ.
     Attorney for Defendant Rapoport

ARTHUR AIDALA, ESQ.
     Attorney for Defendant Aaron

SAMIDH GUHA, ESQ.
MARK McDOUGAL, ESQ.
RANDY TESLIK, ESQ.
     Attorneys for Defendant Smith

MICHAEL BACHNER, ESQ.
     Attorney for Defendant Mosseri

JACK FOX, ESQ.
     Attorney for Defendant Edler

JOSEPH DiBLASI, ESQ.
     Attorney for Defendant Feldman

ELIZABETH FINK, ESQ.
     Attorney for Defendant E. Trincher

RONALD FISCHETTI, ESQ.
     Attorney for Defendant Ting

JIM WALDON, ESQ.
     Attorney for Defendant Bloom

SILVIA SERPE, ESQ.
     Attorney for Defendant Barbalat

ARTHUR AIDALA, ESQ.
     Attorney for Defendant Rajkumar

RONALD FISCHETTI, ESQ.
     Attorney for Defendant Mancuso


Also present:

Yaha Agoureev, Val Gleikh

Russian interpreters

D4JFTOKC

| 1 | (Case called) |
| 2 | (In open court) |
| 3 | THE DEPUTY CLERK:  United States v. Alimzhan |
| 4 | Tokhtakhounov, et al.  Counsel, please state your appearances |
| 5 | for the record. |
| 6 | MR. FISCHMAN:  Good afternoon, your Honor, Harris |
| 7 | Fischman, Josh Naftalis and Pete Skinner on behalf of the |
| 8 | government, joined at counsel table by FBI Special Agent Robert |
| 9 | Hanrad. |
| 10 | THE COURT:  Good afternoon to all of you.  My deputy |
| 11 | is going to call each defendant's name.  When she does I want |
| 12 | counsel for that defendant to note his or her appearance and |
| 13 | note whether or not his or her client is present in the |
| 14 | courtroom.  Ms. Barnes. |
| 15 | I've been advised there's one defendant who is not |
| 16 | actually present at the moment but I've been advised he will be |
| 17 | here in two to three minutes, so I think we should wait for |
| 18 | him.  I will stay on the bench and we'll start when he gets |
| 19 | here. |
| 20 | MR. SERNOVITZ:  Your Honor.  I am going to take this |
| 21 | opportunity to make an oral motion, I filled out the forms |
| 22 | earlier, for pro hac vice -- |
| 23 | THE COURT:  Could you identify yourself? |
| 24 | MR. SERNOVITZ:  Harvey Sernovitz.  I represent Michael |
| 25 | Sall. |

D4JFTOKC

1          THE COURT:  All right.  What I think I will do is

2     grant an oral application for pro hac vice purposes for

3     purposes of this proceeding and then you can submit the

4     paperwork to the clerk's office and I will sign whatever order

5     I need going forward.

6          MR. SERNOVITZ:  I prepared an order for oral admission

7     if your Honor wishes to entertain it.

8          THE COURT:  I'm sorry?

9          MR. SERNOVITZ:  Your rules permit an order to be

10    handed up for oral admission and it requires that your Honor

11    sign it, I submit a certificate of good standing within 30 days

12    and pay the fee.  Can I hand it up?

13         THE COURT:  All right.  Is there any reason I can't

14    just grant your motion for purposes of today and have you deal

15    with the folks in the clerk's office, because those are the

16    folks who make sure everything is going forward and let me know

17    and then I can grant it going forward.  I'm more inclined to go

18    that route rather than grant it based on the representation

19    that everything is in order.

20         MR. SERNOVITZ:  I will do that.

21         THE COURT:  So I will grant your motion on that basis.

22         MR. CHESNOFF:  May it please the Court, David

23    Chesnoff.  I'm licensed in Nevada and Texas.  I'm here on

24    behalf of Illya Trincher.  I will make an application and file

25    an application assuming the Court allows me to today.

D4JFTOKC

1          THE COURT:  Granted for today's purposes.

2          MR. SCUDEVI:  Peter Scudevi licensed in Pennsylvania.

3     I will do the same if you approve my motion today.

4          THE COURT:  Who do you represent, sir?

5          MR. SCUDEVI:  Alexander Zaverukha, two thirds down the

6     indictment.

7          MR. SHEAHEN:  Robert Sheahen from the Central District

8     of California appearing for Noah Siegel.

9          THE COURT:  All right, granted again for today's

10    purposes.

11         MR. FOX:  Good afternoon, your Honor.  Jack Fox on

12    behalf of Mr. William Edler, who is not present in court.  I am

13    licensed in the state of Nevada.  I also seek pro hac vice for

14    today's purposes.

15         THE COURT:  Granted.  Anyone else?

16         MR. GUHA:  Steve Guha on behalf of Justin Smith.  Two

17    of my colleagues are here today, Mark McDougal and Randy

18    Teslik, who will be seeking pro se for today's proceedings.

19         THE COURT:  I think you mean pro hac vice, not pro se.

20         MR. GUHA:  Pro hac vice, I apologize.

21         THE COURT:  Granted.  Anyone else?  All right, is that

22    Mr. Edler?

23         THE DEFENDANT:  I'm Mr. Edler.

24         THE COURT:  So I do believe everyone is now present so

25    we can proceed.  Now, as I indicated, my deputy was going to

D4JFTOKC

1    call each defendant's name and when she does counsel for that

2    defendant should note his or her appearance for the record and

3    note that his or her client is present.  That being said,

4    before we begin, I understand that there is one defendant who

5    requires the assistance of an interpreter.  I gather that's

6    Anatoly Shteyngrob.  Am I correct that no other defendants

7    require the assistance of an interpreter?  If anyone does,

8    would counsel please raise your hand?  I see no hands.  I'm

9    going to have my deputy first just swear the interpreters

10   before we proceed.

11            (Interpreters sworn)

12            THE COURT:  Thank you.  Now, Ms. Barnes will call each

13   defendant's name and please note your appearances.

14            THE DEPUTY CLERK:  I apologize if I say anyone

15   incorrectly.

16            Defendant two, Vadim Trincher.

17            MR. FINEMAN:  Michael Fineman on behalf of Mr.

18   Trincher.  Mr. Trincher is present.  Your Honor, I have an

19   application to make but I would be happy to make it at the end

20   of the proceeding.

21            THE COURT:  What's the nature of the application?

22            MR. FINEMAN:  To be relieved.

23            THE COURT:  Is anyone here to substitute for you?

24            MR. FINEMAN:  No, your Honor.

25            THE COURT:  All right, we'll deal with that at the end

D4JFTOKC

 1    of the proceeding.

 2              THE DEPUTY CLERK:  Defendant 3, Anatoly Golubchik.

 3              MR. BACH:  Jonathan Bach, your Honor.  Mr. Golubchik

 4    is right in front of me.

 5              THE DEPUTY CLERK:  Defendant 4, Michael Sall?

 6              MR. SERNOVITZ:  Good afternoon, your Honor.  Harvey

 7    Sernovitz appearing especially for this afternoon's proceeding.

 8              THE DEPUTY CLERK:  Defendant 5, Stan Greenberg.

 9              MR. CHABROWE:  Jeff Chabrowe for Mr. Greenberg.  Good

10    afternoon, your Honor.

11              THE DEPUTY CLERK:  Defendant 6, Illya Trincher.

12              MR. CHESNOFF:  Good afternoon, your Honor.  David

13    Chesnoff appearing on behalf of Mr. Trincher who is present who

14    was released on conditions from the Central District of

15    California and traveled here today.

16              THE DEPUTY CLERK:  Defendant 7, Hillel Nahmad.

17              MR. BRAFMAN:  Good afternoon, your Honor.  Benjamin

18    Brafman and Paul Schectiman for Mr. Nahmad, who is present in

19    the courtroom.

20              THE DEPUTY CLERK:  Defendant 8, John Hanson.

21              MR. GILBERT:  Good afternoon, your Honor.  Michael

22    Gilbert and Earl Nemser.  Our client is seated next to us.

23              THE DEPUTY CLERK:  Defendant 9, Noah Siegel.

24              MR. SHEAHEN:  Good afternoon, your Honor.  Robert

25    Sheahen for Mr. Siegel, who is present.

D4JFTOKC

1              THE DEPUTY CLERK:  Defendant 10, Jonathan Hirsch.

2              MR. SIEGEL:  Good afternoon, your Honor.  David

3      Siegel, especially for purposes of today's appearance.  My

4      client is here in the courtroom.

5              THE DEPUTY CLERK:  Defendant 11, Arthur Azen.

6              MR. CARONNA:  Anthony Caronna on behalf of Mr. Azen.

7      Good afternoon, your Honor.  My client is present in court.

8              THE DEPUTY CLERK:  Defendant 12, Donald McCalmont.

9              MR. McGRATH:  Good afternoon, your Honor.  John

10     McGrath on behalf of Mr. McCalmont and he is present here in

11     the courtroom today.

12             THE DEPUTY CLERK:  Defendant 13, Dmitry Druzhinsky.

13             MR. SCHNEIDER:  Good afternoon, your Honor.  Jeremy

14     Schneider for Mr. Druzhinsky, who is in the audience.

15             THE DEPUTY CLERK:  Defendant 14, Alexander Zaverukha.

16             MR. SCUDEVI:  Good afternoon, your Honor.  Peter

17     Scudevi.  My client is present.

18             THE DEPUTY CLERK:  Defendant 15, Alexander Katchaloff.

19             MR. FRISCH:  Andrew Frisch, your Honor, and my client

20     is present.

21             THE DEPUTY CLERK:  Defendant 17, Anatoly Shteyngrob.

22             MR. ELBAZ:  Michael Elbaz.  Good afternoon.  My client

23     is present.

24             THE DEPUTY CLERK:  Defendant 17, Illya Rozenfeld.

25             MR. GRANGER:  Raymond Granger.  Good afternoon, your

D4JFTOKC

1  Honor.  My client is present.

2           THE DEPUTY CLERK:  Defendant 18, Peter Skyllas.

3           MR. WENGER:  Appearing on behalf of Peter Skyllas,

4  Bruce Wenger and my client is present seated in the second row.

5           THE DEPUTY CLERK:  Defendant 19, Ronald Uy.

6           MR. KATSORHIS:  For the defendant, Kerry Katsorhis.

7  My client is in the courtroom.

8           THE DEPUTY CLERK:  Defendant 20, Nicholas Hirsch.

9           MR. CARPINTO:  Good afternoon, your Honor.  Craig

10  Carpinto on behalf of Mr. Hirsch.  He's here seated in the

11  first row.

12           THE DEPUTY CLERK:  Defendant 21, Bryan Zuriff.

13           MR. CLAYMAY:  Charles Claymay and Paul Young.

14  Defendant is present in the courtroom.

15           THE DEPUTY CLERK:  Defendant 22, Moishe Oratz.

16           Mr. KATZBERG:  Robert Katzberg.  My client is present

17  in the room.

18           THE DEPUTY CLERK:  Defendant 23, Kirill Rapoport.

19           MR. SCHWARTZMAN:  Jay Schwartzman for Mr. Rapoport who

20  is here in the courtroom today.

21           THE DEPUTY CLERK:  Defendant 24, David Aaron,.

22           MR. AIDALA:  Arthur Aidala for Mr. Aaron.  Good

23  afternoon, your Honor.  Mr. Aaron is in the second row.

24           THE DEPUTY CLERK:  Defendant 25, Justin Smith.

25           MR. McDOUGAL:  Good afternoon, your Honor.  Mark

D4JFTOKC

1   McDougal, Randy Teslik and Samidh Guha for Mr. Smith, present

2   in the room.

3              THE DEPUTY CLERK:  Defendant 26, Abraham Mosseri.

4              MR. BACHNER:  Good afternoon, your Honor.  Michael

5   Bachner on behalf of Mr. Massori, Mr. Massori is here.  Your

6   Honor, we have a bail application request.  We'll wait until

7   the end of the proceeding.

8              THE COURT:  Thank you.

9              THE DEPUTY CLERK:  Defendant 27, William Edler.

10             MR. FOX:  Good afternoon, your Honor.  Jack Fox on

11  behalf of Mr. Edler who is now present in the courtroom after

12  self surrendering this morning.  With counsel at table is

13  Justine Harris.

14             THE DEPUTY CLERK:  Defendant 28, Peter Feldman.

15             MR. DiBLASI:  Good afternoon, your Honor.  Joseph

16  DiBlasi.  My client is in the courtroom.

17             THE DEPUTY CLERK:  Defendant 29, Eugene Trincher.

18             MS. FINK:  Good afternoon, your Honor.  Elizabeth Fink

19  and my client is in the courtroom.

20             THE DEPUTY CLERK:  Defendant 30, Edwin Ting.

21             MR. FISCHETTI:  Good afternoon, your Honor.  Ronald

22  Fischetti representing specially for today's proceeding.

23             THE COURT:  Is he present, sir?

24             MR. FISCHETTI:  He's present, yes, sir.

25             THE COURT:  Thank you.

D4JFTOKC

1          THE DEPUTY CLERK:  Defendant 31, Molly Bloom.

2          MR. WALDEN:  Jim Walden and Avi Weitzman for Ms. Bloom

3     who is in the courtroom.

4          THE DEPUTY CLERK:  Defendant 32, William Barbalat.

5          MS. SERPE:  Sylvia Serpe.  Good afternoon, your Honor.

6     The defendant is here by my side.

7          THE DEPUTY CLERK:  Defendant 33, Yugeshwar Rajkumar.

8          MR. AIDALA:  Arthur Aidala for Mr. Matteo, a/k/a

9     Mr. Matteo.  He's in the fourth row, your Honor.

10          THE DEPUTY CLERK:  Defendant 34, Joseph Mancuso.

11          MR. FISCHETTI:  Robert Fischetti for Mr. Mancuso.

12     He's present.

13          THE COURT:  Okay.  Good afternoon to all of you.  Now,

14     I will just ask that during this proceeding if or when you say

15     anything please make sure you identify yourself first, number

16     one, so that the record is accurate; number two, because while

17     I know many of you I don't know all of you and I should know

18     who is speaking.

19          At the outset let me just state for the record, as I

20     think many counsel know, I was an Assistant United States

21     Attorney in this district until last spring, spring of 2012

22     when I took the bench.  Now, based on my review of this

23     indictment I have no reason to think that I had anything to do

24     with the investigation of this case.  I did not know about it

25     until it was assigned to me, but I want to just confirm with

D4JFTOKC

1    the prosecutors that they have no reason to believe that I was

2    involved in any way with the matter.

3         MR. FISCHMAN:  That's correct, your Honor.

4         THE COURT:  Obviously, I was colleagues with the

5    prosecutors and I was colleagues with many of the defense

6    counsel in the room, worked with or against many of the defense

7    counsel.  I don't think there's any basis for me to recuse

8    myself or to warrant my disqualification from the matter.  If

9    anyone has reason to think otherwise you are welcome to bring a

10   proper motion within two weeks from today.

11        I did want to raise at the outset I noticed that

12   Mr. Aidala and Mr. Fischetti are representing two defendants.

13   I don't know if there's a Curcio issue that we need to deal

14   with.  If we do, obviously, we're not going to do it right now

15   here.  Is there any issue on that front?

16        MR. FISCHETTI:  Your Honor, on behalf of Mr. Ting

17   and -- I'm retained by Mr. Mancuso, I'm retained by Mr. Ting.

18   Today he has financial resources to find a lawyer, he hasn't

19   yet, so at this time time for his arraignment I will represent

20   him.  He will then have new counsel very shortly.

21        MR. AIDALA:  Your Honor, I have spoken to both of the

22   defendants and informed them of possible conflicts.  I had a

23   very brief conversation with the prosecutors.  They don't think

24   that there's any conflict at this point.  I kind of just wanted

25   to get through today and see what the Court's calendar would be

D4JFTOKC

<table>
<tr><td>1</td><td>like and then I would delve a little deeper into the issue with</td></tr>
<tr><td>2</td><td>the prosecutors.  The two defendants do not know each other at</td></tr>
<tr><td>3</td><td>all and I believe were involved in very different aspects of</td></tr>
<tr><td>4</td><td>this matter, but I will discuss that with the prosecutors as</td></tr>
<tr><td>5</td><td>soon as possible.</td></tr>
<tr><td>6</td><td>THE COURT:  Mr. Fischman?</td></tr>
<tr><td>7</td><td>MR. FISCHMAN:  Your Honor, I just want to put on the</td></tr>
<tr><td>8</td><td>record and I apologize if there was a miscommunication or a</td></tr>
<tr><td>9</td><td>misinterpretation of any previous conversation, but the</td></tr>
<tr><td>10</td><td>government does not necessarily agree that this is not an issue</td></tr>
<tr><td>11</td><td>that at least would merit a Curcio hearing.  So if counsel is</td></tr>
<tr><td>12</td><td>going to go forward representing both clients, I do think that</td></tr>
<tr><td>13</td><td>this is an issue that would be ripe for a Curcio hearing.</td></tr>
<tr><td>14</td><td>THE COURT:  I think any instance of joint</td></tr>
<tr><td>15</td><td>representation would probably warrant a Curcio hearing.  How</td></tr>
<tr><td>16</td><td>vigorous a hearing is required depends on the circumstances.</td></tr>
<tr><td>17</td><td>Why don't you guys talk about it after this proceeding and if</td></tr>
<tr><td>18</td><td>there is going to be a joint representation bring it to my</td></tr>
<tr><td>19</td><td>attention properly and let's deal with it promptly so we can</td></tr>
<tr><td>20</td><td>put that issue to rest.</td></tr>
<tr><td>21</td><td>All right, we are primarily here for purposes of</td></tr>
<tr><td>22</td><td>arraigning the defendants on indictment 13 CR 268 charging the</td></tr>
<tr><td>23</td><td>defendants in 27 counts with various crimes, that is not to say</td></tr>
<tr><td>24</td><td>that each defendant is charged in each count, but in various</td></tr>
<tr><td>25</td><td>arrangements.  I am going to call each defendant by name.  I</td></tr>
</table>

D4JFTOKC

1    also apologize in advance if I butcher any of these names.

2    When I call your name I want that defendant and his or her

3    attorney to rise.  If the defendant -- I don't know if counsel

4    are all near their clients, but I'll give you an opportunity if

5    you want to join your client before answering any of my

6    questions.  I will then ask each defendant the following four

7    questions:  Number one, have you seen a copy of the indictment;

8    number two, have you discussed the indictment with your

9    counsel; number three, do you want me to read it aloud or do

10   you waive its public reading, and, number four, how do you

11   plead at this time.  All right?  So as I call your name I will

12   ask you each of those questions and ask you to answer them.

13            Now, beginning first with Vadim Trincher, would you

14   please rise?

15            MR. FISCHMAN:  Your Honor, before we begin that

16   process I just want to flag two items for the Court and I

17   apologize if the Court is already aware of these.  But one,

18   this is Mr. Bill Edler's first appearance so he has not been

19   presented prior at all and, two, I do believe with counsel for

20   Ms. Fink representing Eugene Trincher, my understanding is she

21   is here today as CJA counsel but it's my understanding that she

22   has not been appointed and no financial affidavit has been

23   submitted.  So I just wanted to flag that to your Honor's

24   attention.

25            THE COURT:  I certainly knew about the former and it

D4JFTOKC

1    was my oversight dealing with the first.  You can now be

2    seated.  Let me begin by asking Mr. Edler to stand with his

3    counsel.  And actually, Mr. Fischman, may I first have the time

4    and date of Mr. Edler's arrest?

5               MR. FISCHMAN:  Your Honor, the defendant voluntarily

6    surrendered this morning at approximately 9:00 a.m.

7               THE COURT:  Is the defendant a foreign national or a

8    United States citizen?

9               MR. FISCHMAN:  A United States citizen, your Honor.

10              THE COURT:  Mr. Edler, I am Judge Furman.  I want to

11   begin by informing you of certain rights that you have.  First,

12   you're not required to make any statements to the authorities.

13   Anything you say can be used against you.  If you have made any

14   statements in the past, you still have the right to remain

15   silent going forward.  You also have the right to be

16   represented by an attorney.  If you cannot afford an attorney,

17   you have the right to request that the Court appoint one for

18   you.  I understand, Mr. Fox, I assume you are retained, is that

19   correct?

20              MR. FOX:  That is correct, your Honor.

21              THE COURT:  All right.  I think I will leave the

22   remaining questions until we get to Mr. Edler in connection

23   with the arraignment on the theory that they're basically the

24   same questions unless counsel has any objection to proceeding

25   that way.

D4JFTOKC

1          MR. FOX:  None, your Honor.

2          THE COURT:  Now, Ms. Fink, what is the situation with

3     your representation?

4          MS. FINK:  The way I understand it, I'm appearing for

5     the day, your Honor, in that Mr. Trincher is going to retain

6     counsel and needs the weekend to do it, I'm told.

7          THE COURT:  I'm sorry, please keep your voice up.

8          MS. FINK:  He is going to retain counsel so I'm making

9     a pro forma appearance for them until counsel is retained.  I

10    have spoken to him only for a minute and I have spoken to the

11    family, so I am really just standing in here until the real

12    lawyer comes.

13         THE COURT:  Okay, and was Mr. Trincher previously

14    presented before the magistrate judge?

15         MS. FINK:  I believe he was presented in California.

16         MR. CHESNOFF:  Your Honor, David Chesnoff.  If it

17    please the Court, he was arrested in California, had CJA

18    representation there was released on conditions, but it's only

19    been in the last 24 to 48 hours so he traveled back as quick as

20    he could and hasn't had a chance to retain counsel yet.

21         THE COURT:  So my inclination would be to appoint

22    Ms. Fink as CJA counsel for purposes of today's proceedings so

23    we can go forward with the proceedings with the understanding

24    that defendant will retain counsel and will resolve that

25    quickly.

D4JFTOKC

1          MS. FINK:  Yes.  I spoke to the family.  They're okay

2     with that.

3          MR. FISCHMAN:  No objection from the government.

4          THE COURT:  Anything else to deal with before we

5     proceed with the arraignment?

6          MR. FISCHMAN:  No, your Honor.

7          THE COURT:  Once again, Vladimir Trincher, please

8     stand.  Have you seen a copy of the indictment 13 CR 268?

9          THE DEFENDANT:  No -- oh, yes.

10         THE COURT:  Have you discussed it with your lawyer?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Do you waive its public reading or do you

13    want me to read it out loud?

14         THE DEFENDANT:  I waive the public.

15         THE COURT:  How do you plead at this time?

16         THE DEFENDANT:  Not guilty.

17         THE COURT:  Thank you.  You may be seated.  Anatoly

18    Golubchik.  Have you seen a copy of the indictment?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And have you discussed it with your

21    lawyer?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you waive its public reading?

24         THE DEFENDANT:  Waive.

25         THE COURT:  And how do you plead at this time?

D4JFTOKC

| | |
|---|---|
| 1 | THE DEFENDANT:  Not guilty. |
| 2 | THE COURT:  You may be seated. |
| 3 | Michael Sall.  Have you seen a copy of the indictment? |
| 4 | THE DEFENDANT:  Yes. |
| 5 | THE COURT:  Have you discussed it with your lawyer? |
| 6 | THE DEFENDANT:  Yes. |
| 7 | THE COURT:  Do you waive its public reading? |
| 8 | THE DEFENDANT:  Yes. |
| 9 | THE COURT:  How do you plead at this time? |
| 10 | THE DEFENDANT:  Not guilty. |
| 11 | THE COURT:  Thank you. |
| 12 | Stan Greenberg.  Have you seen a copy of the |
| 13 | indictment? |
| 14 | THE DEFENDANT:  Yes. |
| 15 | THE COURT:  Have you discussed it with your lawyer? |
| 16 | THE DEFENDANT:  Yes. |
| 17 | THE COURT:  Do you waive its public reading? |
| 18 | THE DEFENDANT:  Yes. |
| 19 | THE COURT:  How do you plead at this time? |
| 20 | THE DEFENDANT:  Not guilty. |
| 21 | THE COURT:  Thank you.  You may be seated. |
| 22 | Illya Trincher.  Have you seen a copy of the |
| 23 | indictment? |
| 24 | THE DEFENDANT:  Yes, your Honor. |
| 25 | THE COURT:  Have you discussed it with your lawyer? |

D4JFTOKC

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  Do you waive its public reading?

3           THE DEFENDANT:  Yes, I do.

4           THE COURT:  How do you plead at this time?

5           THE DEFENDANT:  Not guilty.

6           THE COURT:  Thank you.  You may be seated.

7           Hillel Nahmad.  Have you seen a copy of the

8     indictment?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Have you discussed it with your lawyer?

11          THE DEFENDANT:  Yes, I have.

12          THE COURT:  Do you waive its public reading?

13          THE DEFENDANT:  Yes, I do.

14          THE COURT:  How do you plead at this time?

15          THE DEFENDANT:  Not guilty.

16          THE COURT:  You may be seated.

17          John Hanson.  Have you seen a copy of the indictment?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Have you discussed it with your lawyer?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you waive its public reading?

22          THE DEFENDANT:  Yes.

23          THE COURT:  How do you plead at this time?

24          THE DEFENDANT:  Not guilty, your Honor.

25          THE COURT:  Thank you.  You may be seated.

D4JFTOKC

 1              Noah Siegel.  Have you seen a copy of the indictment?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Have you discussed it with your lawyer?

 4              THE DEFENDANT:  Yes, your Honor.

 5              THE COURT:  Do you waive its public reading?

 6              THE DEFENDANT:  Yes.

 7              THE COURT:  How do you plead at this time?

 8              THE DEFENDANT:  Not guilty.

 9              THE COURT:  Thank you.  You may be seated.

10              Jonathan Hirsch.  Have you seen a copy of the

11   indictment?

12              THE DEFENDANT:  Yes, your Honor.

13              THE COURT:  Have you discussed it with your lawyer?

14              THE DEFENDANT:  I have.

15              THE COURT:  Do you waive its public reading?

16              THE DEFENDANT:  Yes.

17              THE COURT:  How do you plead at this time?

18              THE DEFENDANT:  Not guilty, your Honor.

19              THE COURT:  Thank you.  You may be seated.

20              Arthur Azen.  Have you seen a copy of the indictment?

21              THE DEFENDANT:  I have.

22              THE COURT:  Have you discussed it with your lawyer?

23              THE DEFENDANT:  Yes, sir.

24              THE COURT:  Do you waive its public reading?

25              THE DEFENDANT:  I do.

D4JFTOKC

1          THE COURT:  How do you plead at this time?

2          THE DEFENDANT:  Not guilty, your Honor.

3          THE COURT:  Thank you.  You may be seated.

4          Donald McCalmont.  Have you seen a copy of the

5     indictment?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Have you discussed it with your lawyer?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you waive its public reading?

10          THE DEFENDANT:  Yes.

11          THE COURT:  How do you plead at this time?

12          THE DEFENDANT:  Not guilty.

13          THE COURT:  Thank you.  You may be seated.

14          Dmitry Druzhinsky.  Have you seen a copy of the

15     indictment?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Have you discussed it with your lawyer?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you waive its public reading?

20          THE DEFENDANT:  Yes.

21          THE COURT:  How do you plead at this time?

22          THE DEFENDANT:  Not guilty.

23          THE COURT:  Thank you.  You may be seated.

24          Alexander Zaverukha.  Have you seen a copy of the

25     indictment?

D4JFTOKC

1              THE DEFENDANT:  Yes.

2              THE COURT:  Have you discussed it with your lawyer?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Do you waive its public reading?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  How do you plead at this time?

7              THE DEFENDANT:  Not guilty.

8              THE COURT:  Thank you.  You may be seated.

9              Alexander Katchaloff.  Have you seen a copy of the

10   indictment?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Have you discussed it with your lawyer?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you waive its public reading?

15             THE DEFENDANT:  Yes.

16             THE COURT:  How do you plead at this time?

17             THE DEFENDANT:  Not guilty.

18             THE COURT:  Thank you.

19             Anatoly Shteyngrob.  Have you seen a copy of the

20   indictment, sir?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And have you discussed it with your

23   lawyer?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Do you waive its public reading?

D4JFTOKC

1          THE DEFENDANT:  No.

2          THE COURT:  Would you like me to read it aloud?

3          MR. ELBAZ:  Your Honor, can I have the assistance of

4     the interpreter?

5          THE COURT:  Absolutely.

6          (Pause)

7          MR. ELBAZ:  Your Honor, we're ready to proceed.  I

8     just ask the Court to start from the beginning again just to

9     make sure there's no misinterpretation.

10          THE COURT:  Okay.  And, Mr. Shteyngrob, if you have

11     any trouble understanding the interpreters or if the equipment

12     isn't working I want to make sure you let me know.

13          Have you seen a copy of the indictment?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Have you discussed it with your lawyer?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you waive its public reading?

18          THE DEFENDANT:  No.

19          THE COURT:  You would like me to read it out loud?

20          THE DEFENDANT:  No.

21          THE COURT:  Okay.  You do not want me to read it out

22     loud, is that correct?

23          THE DEFENDANT:  No, I don't want to.

24          THE COURT:  Okay.  I will interpret that as waiving

25     its public reading.  And how do you plead at this time?

D4JFTOKC

1              THE DEFENDANT:  No.

2              THE COURT:  I will enter a not guilty plea.

3              MR. ELBAZ:  Thank you, your Honor.

4              THE COURT:  I do want to note, just going back one

5    moment to Mr. Edler, that I understand that we have to deal

6    with the issue of bail and probably it was obvious but I will

7    address that at the end of the proceeding as well.

8              Turning to the next defendant, Illya Rosenfeld.  Have

9    you seen a copy of the indictment?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Have you discussed it with your lawyer?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you waive its public reading?

14             THE DEFENDANT:  Yes.

15             THE COURT:  How do you plead at this time?

16             THE DEFENDANT:  Not guilty.

17             THE COURT:  Thank you.

18             Peter Skyllas.  Have you seen a copy of the

19   indictment?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Have you discussed it with your lawyer?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Do you waive its public reading?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  How do you plead at this time?

D4JFTOKC

1              THE DEFENDANT:  Not guilty.

2              THE COURT:  Thank you.

3              Ronald Uy.  Have you seen a copy of the indictment?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Have you discussed it with your lawyer?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Do you waive its public reading?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  How do you plead at this time?

10             THE DEFENDANT:  Not guilty.

11             THE COURT:  Thank you.  You may be seated.

12             Nicholas Hirsch.  Have you seen a copy of the

13   indictment?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Have you discussed it with your lawyer?

16             THE DEFENDANT:  Yes, I have.

17             THE COURT:  Do you waive its public reading?

18             THE DEFENDANT:  Yes, I do.

19             THE COURT:  How do you plead at this time?

20             THE DEFENDANT:  Not guilty, your Honor.

21             THE COURT:  Thank you.  You may be seated.

22             Brian Zuriff.  Have you seen a copy of the indictment?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Have you discussed it with your lawyer?

25             THE DEFENDANT:  Yes.

D4JFTOKC

1          THE COURT:  Do you waive its public reading?

2          THE DEFENDANT:  Yes.

3          THE COURT:  How do you plead at this time?

4          THE DEFENDANT:  Not guilty.

5          THE COURT:  Thank you.  You may be seated.

6          Moishe Oratz.  Have you seen a copy of the indictment?

7          THE DEFENDANT:  Yes, I have.

8          THE COURT:  Have you discussed it with your lawyer?

9          THE DEFENDANT:  Yes, I have.

10         THE COURT:  Do you waive its public reading?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  How do you plead at this time?

13         THE DEFENDANT:  Not guilty.

14         THE COURT:  Thank you.  You may be seated.

15         Kirill Rapoport.  Have you seen a copy of the

16  indictment?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Have you discussed it with your lawyer?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you waive its public reading?

21         THE DEFENDANT:  Yes.

22         THE COURT:  How do you plead at this time?

23         THE DEFENDANT:  Not guilty.

24         THE COURT:  Thank you.  You may be seated.

25         David Aaron.  Have you seen a copy of the indictment?

28

D4JFTOKC

1          THE DEFENDANT:  Yes.

2          THE COURT:  Have you discussed it with your lawyer?

3          THE DEFENDANT:  Yes, I have.

4          THE COURT:  Do you waive its public reading?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  How do you plead at this time?

7          THE DEFENDANT:  Not guilty, your Honor.

8          THE COURT:  Thank you.  You may be seated.

9          Justin Smith.  Have you seen a copy of the indictment?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Have you discussed it with your lawyer?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Do you waive its public reading?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  How do you plead at this time?

16         THE DEFENDANT:  Not guilty, your Honor.

17         THE COURT:  Thank you.  You may be seated.

18         Abraham Mosseri.  Have you seen a copy of the

19  indictment?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Have you discussed it with your lawyer?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you waive its public reading?

24         THE DEFENDANT:  Yes.

25         THE COURT:  How do you plead at this time?

D4JFTOKC

1          THE DEFENDANT:  Not guilty.

2          THE COURT:  Thank you.  You may be seated.

3          William Edler.  Have you seen a copy of the

4    indictment?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Have you discussed it with your lawyers?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Do you waive the public reading?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  How do you plead at this time?

11          THE DEFENDANT:  Not guilty, your Honor.

12          THE COURT:  Thank you.  You may be seated.

13          Peter Feldman.  Have you seen a copy of the

14    indictment?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Have you discussed it with your lawyer?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you waive its public reading?

19          THE DEFENDANT:  Yes.

20          THE COURT:  How do you plead at this time?

21          THE DEFENDANT:  Not guilty.

22          THE COURT:  Thank you.  You may be seated.

23          Eugene Trincher.  Have you seen a copy of the

24    indictment?

25          THE DEFENDANT:  Yes, sir.

D4JFTOKC

| | |
|---|---|
| 1 | THE COURT:  Have you discussed it with Ms. Fink or |
| 2 | with the lawyer who represented you in California? |
| 3 | THE DEFENDANT:  Yes, I have. |
| 4 | THE COURT:  Do you waive its public reading? |
| 5 | THE DEFENDANT:  Yes, I do. |
| 6 | THE COURT:  And how do you plead at this time? |
| 7 | THE DEFENDANT:  Not guilty, sir. |
| 8 | THE COURT:  Thank you. |
| 9 | Edwin Ting.  Have you seen a copy of the indictment? |
| 10 | THE DEFENDANT:  Yes, your Honor. |
| 11 | THE COURT:  Have you discussed it with your lawyer? |
| 12 | THE DEFENDANT:  Yes, your Honor. |
| 13 | THE COURT:  And do you waive its public reading? |
| 14 | THE DEFENDANT:  Yes, your Honor. |
| 15 | THE COURT:  How do you plead at this time? |
| 16 | THE DEFENDANT:  Not guilty, your Honor. |
| 17 | THE COURT:  Thank you.  You may be seated. |
| 18 | Molly Bloom.  Have you seen a copy of the indictment? |
| 19 | THE DEFENDANT:  Yes. |
| 20 | THE COURT:  And have you discussed it with your |
| 21 | lawyers? |
| 22 | THE DEFENDANT:  Yes. |
| 23 | THE COURT:  Do you waive its public reading? |
| 24 | THE DEFENDANT:  Yes. |
| 25 | THE COURT:  How do you plead at this time? |

D4JFTOKC

1          THE DEFENDANT:  Not guilty, your Honor.

2          THE COURT:  Thank you.  You may be seated.

3          William Barbalat.  Have you seen a copy of the

4    indictment?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Have you discussed it with your lawyer?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you waive its public reading?

9          THE DEFENDANT:  Yes.

10          THE COURT:  How do you plead at this time?

11          THE DEFENDANT:  Not guilty.

12          THE COURT:  Thank you.  You may be seated.

13          Yugeshwar Rajkumar.  Have you seen a copy of the

14    indictment?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Have you discussed it with your lawyer?

17          THE DEFENDANT:  I have, your Honor.

18          THE COURT:  Do you waive its public reading?

19          THE DEFENDANT:  I do, your Honor.

20          THE COURT:  How do you plead at this time?

21          THE DEFENDANT:  Not guilty.

22          THE COURT:  Thank you.  You may be seated.

23          And finally, Joseph Mancuso.  Have you seen a copy of

24    the indictment?

25          THE DEFENDANT:  Yes.

D4JFTOKC

| | |
|---|---|
| 1 | THE COURT:  Have you discussed it with your lawyer? |
| 2 | THE DEFENDANT:  I have. |
| 3 | THE COURT:  Do you waive its public reading? |
| 4 | THE DEFENDANT:  Yes. |
| 5 | THE COURT:  How do you plead at this time? |
| 6 | THE DEFENDANT:  Not guilty. |
| 7 | THE COURT:  Thank you.  You may be seated. |
| 8 | I appreciate everyone's patience. |
| 9 | All right, Mr. Fischman, would you please -- I have |
| 10 | reviewed the indictment, but would you please just give me a |
| 11 | summary of what this case is about. |
| 12 | MR. FISCHMAN:  Yes, your Honor.  This case charges two |
| 13 | different RICO enterprises with both substantive and conspiracy |
| 14 | charges.  The first enterprise, the Taiwanchik-Trincher |
| 15 | organization, as alleged in the indictment oversaw a massive |
| 16 | sports gambling enterprise that principally involved the |
| 17 | operators of the enterprise, Vadim Trincher and Anatoly |
| 18 | Golubchik, who were located in the New York area overseeing an |
| 19 | international sports book that included bookies all over the |
| 20 | world, including in Ukraine and Moscow, and then in particular |
| 21 | with the clients who were in the former Soviet Union, whether |
| 22 | it be in Russia or the Ukraine, they had a very sophisticated |
| 23 | scheme for getting the proceeds of the gambling organization |
| 24 | back into the United States and then laundering the money once |
| 25 | it was in the U.S.  So the money went -- and this is tens of |

D4JFTOKC

millions of dollars -- from, for example, the Ukraine into a

number of shell accounts that they operated in Cyprus, then

from Cyprus into, either directly into their pockets in the

United States, into more shell companies in the United States,

or into legitimate investments or seemingly legitimate

investments such that when they got the money out it came out,

for instance, as a disbursement from a hedge fund or real

estate payment rather than a gambling from the Soviet Union.

          The indictment also alleges that this enterprise used

force or threats of force to collect debts, including the

presence of the one fugitive in this case, Alimzhan

Tokhtakhounov, in the former Soviet Union, who had given his

position as a vor or a thief-in-law was in a position through

implicit or explicit threats to insure that payments which were

often hundreds of thousands or in the millions of dollars were

made in a timely fashion.

          The second enterprise, the Nahmad-Trincher enterprise,

which includes Vadim Trincher, the lead defendant in the

Taiwanchik-Trincher organization, and his son, Illya Trincher,

operated a somewhat similar enterprise but it was based

principally out of the United States and involved essentially a

younger generation of persons.  They ran a large sports

gambling organization enterprise using various on-line websites

which operated illegally in the United States to procure

millions of millions of dollars of bets.  The winnings of that

D4JFTOKC

enterprise were laundered through various vehicles, including, as alleged in the indictment, the Hilel Nahmad Gallery in New York City and a plumbing company that was acquired as payment of an approximately $2 million debt from one of their customers.

There also is an allegation of extortion as it relates to the acquiring of that company and that allegation of extortion is on the theory of it's -- I should say it's an 894 charge, meaning extortionate means in the collection of an extension of credit. And the extortion there is a threat of harm or actual harm to property, the property being the plumbing business which they acquired the interest of and used for their own personal interests, keeping the gambler who owned that company originally in a position of harm to his property.

With respect to the remaining defendants, there is another sports gambling enterprise that is alleged, that compromised of, among others, Dmitry Druzhinsky, Arthur Azen, Alexander Zaverukha and Alexander Katchaloff. That was a sports book that also used various online websites operating illegally in the United States. Dmitry Druzhinsky from that sports gambling operation with other individuals, namely, Anatoly Shteyngrob and Illya Rosenfeld, had their own money laundering operation that was somewhat similar to the structure of the Taiwanchik-Trincher organization and involved in that conspiracy was Anatoly Golubchik as well who used a money

D4JFTOKC

laundering vehicle that was used for the Taiwanchik-Trincher

organization also from that conspiracy.  And in that conspiracy

for money laundering they also, just as the Taiwanchik-Trincher

organization, brought money from the former Soviet Union

through Cyprus, they brought money in from Latvia and the

gambling money went from Latvia into, among other places, an

A.C. Delco as alleged in the indictment, a car shop in

Brooklyn, and that money was disbursed to other entities owned

by Dmitry Druzhinsky and Ilya Rosenfeld before the money was

then pocketed by the defendants.

There are various defendants not charged with

non-threatening RICO offenses, but charged with other gambling

offenses and participating in the gambling enterprise of the

Trincher Nahmad enterprise.  Those individuals include, among

others, Brian Zuriff, Moishe Oratz, Justin Smith, Abe Mosseri,

Bill Edler, Bill Feldman and all these persons assisted the

sports gambling operation.

There also are substantive charges that are similar to

the RICO predicates that are charged against the RICO

defendants and there are certain defendants who are not charged

with the RICO crimes, for instance, Eugene Trincher and Edwin

Ting who helped with some of the other predicates, for

instance, money laundering.  Those two individuals participated

with members of the Trincher-Nahmad organization in laundering

the proceeds, although they're not charged in the RICO.

D4JFTOKC

1        And there are also certain defendants charged with the

2   operation of illegal poker rooms.  Those defendants include,

3   among others, Molly Bloom, Eugene Trincher, Edwin Ting,

4   Yugeshwar Rajkumar, Joe Mancuso and Will Barbalat, and each of

5   those defendants is also charged independently with a Travel

6   Act violation.

7        And, finally, there's one other point I'd like to make

8   about the Trincher-Nahmad enterprise as opposed to the

9   Trincher-Taiwanchik enterprise.  While they are both charged

10  under a theory of pattern of racketeering activity, the

11  Trincher-Nahmad enterprise is also charged alternatively with

12  committing the offense through the collection of unlawful debt.

13       Your Honor, I think that is a summary of defendants

14  and the charges against them.  I would just like to put one

15  other thing on the record which is with respect to defendant

16  John Hanson, the government learned at his presentment this

17  past Tuesday that his actual name is John Jarecki, spelled

18  J-a-r-e-c-k-i, and the government anticipates that when a

19  superseding indictment is filed in this matter, if nothing else

20  for cosmetic changes, that that name will be changed in the

21  superseding indictment.

22       THE COURT:  Thank you.  Number one, with the exception

23  of that change in the superseding indictment do you anticipate

24  the filing of any other superseding indictments, either adding

25  new defendants or new charges?

D4JFTOKC

1          MR. FISCHMAN:  Your Honor, I certainly think it's

2     possible.  I don't want to limit it to anything at this point,

3     but there are aspects of the investigation that are ongoing and

4     I certainly think it is possible that there could be additional

5     defendants named and/or additional charges brought against

6     certain defendants who are currently charged.

7          THE COURT:  Can you just address the issue requesting

8     a joinder pursuant to Rule 8(b)?  Obviously to the extent that

9     there are common defendants in different counts, I don't think

10    there's an issue, but it sounds from your description and from

11    my review of the indictment that these are two different

12    enterprises, albeit with relatives in common and similar

13    activities.  What's the basis for charging them together in one

14    indictment?

15         MR. FISCHMAN:  Your Honor, although the government in

16    its discretion did not necessarily -- well, did not charge

17    every defendant in the same counts and broke this up as two

18    enterprises, there is substantial overlap between the two

19    enterprises.  For instance, in the acquisition of the plumbing

20    company I mentioned a moment ago, there are substantial

21    intercepts and wiretaps which I'll describe more in a moment

22    when I'm sure we'll discuss discovery in this case in which

23    members of the Taiwanchik-Trincher organization enterprise are

24    advising members of the Nahmad-Trincher enterprise on how to

25    use and run the plumbing company for their own ends, and in

D4JFTOKC

1  fact participate at times in gaining a financial advantage from

2  the person who owned that enterprise.  And similarly, with the

3  operation of the sports gambling businesses, both in the realm

4  of poker, which is not a part of the RICO enterprise case but

5  is a different part of this case, and in the operation of

6  sports gambling operation through websites, all of these

7  characters, even if charged in different conspiracies, are

8  communicating with each other at times and at points and are

9  advising each other, and I suppose theoretically could have

10 been charged in some instances under an aiding and abetting

11 theory with being part of different enterprises or different

12 operations, but, again, the government in its discretion

13 thought that the way we described the enterprises and

14 conspiracies was most true to their core participants and core

15 partners.

16          THE COURT:  Thank you.  And what is the status of the

17 speedy trial clock at this time?

18          MR. FISCHMAN:  Your Honor, the Speedy Trial Act was

19 excluded with respect to all defendants from Tuesday through

20 today and for the defendants who were presented on Wednesday

21 and Thursday, from then through today.

22          THE COURT:  And the indictment was unsealed on

23 Tuesday, is that correct?

24          MR. FISCHMAN:  Your Honor, I guess a simpler way of

25 answering that is no time has elapsed from the Speedy Trial

D4JFTOKC

1    Act.

2              THE COURT:  And the last preliminary question, I

3    gather from reading the indictment or I presume that there are

4    victims or crime victims within the meaning of the Crime

5    Victims Rights Act in this case.  Is there a process in place

6    to make sure they're notified of court appearances and the

7    like?

8              MR. FISCHMAN:  Absolutely, your Honor.

9              THE COURT:  There is a process in place already?

10             MR. FISCHMAN:  There is in place -- we contacted our

11   victim witness office prior to bringing the charges and of

12   course notified them of the charges once they were unsealed and

13   they are fully aware of notifying the persons who need to be

14   notified and have a right to be notified.

15             THE COURT:  You mentioned discovery.

16             MR. FISCHMAN:  Yes, your Honor.

17             THE COURT:  Why don't you tell me the nature and types

18   of discovery.  What are the things you anticipate disclosing in

19   this case?  Keep your voice up to make sure everybody in the

20   back can hear you as well.

21             MR. FISCHMAN:  Yes, your Honor.  I think the easiest

22   way to go through this is identify the categories of discovery

23   that I think could potentially be ripe for motion practice.  I

24   think there are three such categories.  They are, one, the

25   Title 3 intercepts.  There were I believe nine different cell

D4JFTOKC

1    phones that were intercepted, some for as many as four months,

2    so there is voluminous wiretap discovery.

3              The second category --

4              THE COURT:  Do you have an estimation of how much

5    communication, how many calls were intercepted pursuant to the

6    wiretap?

7              MR. FISCHMAN:  Your Honor, it's certainly over 10,000.

8    I wouldn't be surprised if it's over 25,000 intercepts.  I

9    don't have a precise number, but it's voluminous, to say the

10   least.  And as to discovery of those --

11             THE COURT:  Is that primarily in English?

12             MR. FISCHMAN:  Primarily in English.  There are some

13   intercepts, for example for Anatoly Golubchik and Vadim

14   Trincher's phone and Dimitri Druzhinsky's phone and a few over

15   I believe Arthur Azen's phone that are in Russian, but there

16   are many that are in English.

17             THE COURT:  All right.

18             MR. FISCHMAN:  I'll circle back to this in a moment,

19   but the government is going to be prepared to get to the end

20   and sort of go back to make discovery in full.  There may be

21   some odds and ends, but in two weeks time, and that includes

22   all of the wiretap evidence, including the affidavits and

23   documents in support of, all of the orders, all of the audio,

24   the transcripts to the extent they -- and the transcripts to

25   the extent that they exist, which there are many, many

D4JFTOKC

1    transcripts.

2              The second category, your Honor, I think potentially

3    could be ripe for motion practice is various searches that were

4    conducted in this matter.  That includes search warrants on

5    several e-mail accounts and search warrants that were executed

6    on the day of the arrest, several residential search warrants

7    and a few search warrants that were executed at places of

8    business and also searches incident to arrest that were

9    executed on the day of arrests.

10             One category of evidence that I think will take a

11   little bit more time to get to the defendants is not the

12   underlying searches or the orders or the inventories of what

13   was seized, but there were many computers seized and the FBI is

14   doing their best to finish imaging those computers so they

15   could get the original computers back to the defendants.

16   However, the process of the computer technicians doing the

17   review I anticipate will take longer than the two weeks, which

18   the rest of discovery will go out.

19             The third category is there were certain defendants

20   who made post-arrest statements.  Those statements will be of

21   course produced in discovery.

22             THE COURT:  Can you identify which defendants are in

23   that category?

24             MR. FISCHMAN:  Your Honor, at this time I'm not

25   prepared to identify which defendants are in that category.  If

D4JFTOKC

1    it pleases the Court, it's also the government's preference to

2    not identify them at this time.

3            THE COURT:  Okay.

4            MR. FISCHMAN:  There also are additional categories of

5    discovery.  Two principal categories that come to mind are bank

6    records and other financial records.  There was an extensive

7    financial investigation done by the FBI, so that is going to be

8    quite voluminous, but we will be prepared to produce most if

9    not all of that discovery in two weeks time and to the extent

10   that there is additional materials that need to be produced we

11   will insure that it's done as quickly as possible.

12           THE COURT:  When you say "quite voluminous" could you

13   give me an estimate of what scale we're talking about?

14           MR. FISCHMAN:  Your Honor, approximately 300 bank

15   accounts, both for individuals and for various entities.  And I

16   should state, your Honor, that the government is in the process

17   of obtaining additional information from various foreign

18   countries that it does not have in its possession at this time,

19   but I do anticipate that in the future we will be obtaining

20   additional financial information from outside of the United

21   States.

22           Your Honor, finally, there are also some tax returns

23   for certain individuals and a couple of entities that the

24   government will be producing in two weeks time.

25           Your Honor, I think in broad strokes that's what the

D4JFTOKC

1  government expects to produce and the vast majority of it will

2  be in no later than two weeks time.

3         THE COURT:  And obviously to the extent that things

4  come into your possession after today you are well aware of

5  your obligations and continuing obligations to make discovery,

6  but to the extent that you don't produce materials in two weeks

7  time, when do you anticipate being able to produce everything

8  in your possession at present?

9         MR. FISCHMAN:  Everything in our possession at the

10  present, putting aside for a moment the computer issue, as far

11  as the bank records and the other documentary evidence, no

12  later than two weeks after that date.  I don't have a specific

13  drop-dead date for your Honor on the computers, but I can

14  assure your Honor that the FBI is making it a priority,

15  although some of their resources have been reallocated to the

16  Boston area, so it's gotten a little slower off the ground than

17  I would have hoped.

18         THE COURT:  I am going to set a deadline for the

19  production of all discovery that you have in your possession,

20  aside from the computers of one month from today, with the

21  understanding that you should produce what you can on a rolling

22  basis as well, so to the extent that you indicated that you

23  were prepared to and planning to make discovery in two weeks

24  time with the vast majority of the materials, especially the

25  wiretaps, I would strongly urge you if not order to you do so.

D4JFTOKC

1          The computers I will set an outside date for

2     production of those materials of two months.  If it turns out

3     that for whatever reason things are going more slowly, you can

4     advise me of that by letter and make an application for an

5     extension of that date, but at least that will give an outside

6     date for you to work with.  Obviously, I'm concerned, I want to

7     make sure defendants get the materials sooner rather than later

8     so that they can review them and have ample time to prepare for

9     trial and motion practice.

10          MR. FISCHETTI:  May I be heard one moment about one

11     question on discovery?  Mr. Fischetti.  I've been involved in

12     cases like this before.

13          THE COURT:  Mr. Fischetti, I know it's you, but just

14     identify yourself as Mr. Fischetti.

15          MR. FISCHETTI:  When Mr. Fischman says he's going to

16     give us the wiretap information, 503's in two weeks, do I

17     understand that in addition to the application, the affidavits,

18     the progress reports and the amendment, if possible, that he's

19     going to give to each defendant the 25,000 phone calls within

20     two weeks and the draft transcripts not to be used if he has

21     them?

22          MR. FISCHMAN:  That's precisely right and the

23     government is prepared to do that.

24          MR. FISCHETTI:  Thank you.

25          THE COURT:  Could you just share for counsel's benefit

D4JFTOKC

1     in what format you plan to make these materials available?

2             MR. FISCHMAN:  Your Honor, they're going to be

3     available, in particular dealing with the audio, they're going

4     to be available on disks.

5             THE COURT:  And what about with respect to the

6     defendants that are in custody, what plan if any do you have to

7     make sure that the materials are available to them?

8             MR. FISCHMAN:  Your Honor, we will reach out to as

9     appropriate the MCC and/or the MDC and confer with counsel

10    there to make sure that the materials are available to them.

11    If there is any problem with that, I don't anticipate that

12    there will be, but if there is, we will advise the Court of

13    that no later -- well, immediately, and no later than Monday,

14    close of business.

15            THE COURT:  Please do confer about that and whether I

16    hear from defense counsel or the government if there are any

17    problems with making those materials available I do want to

18    learn that promptly.  Now, with the exception of Ms. Fink whose

19    appointment is probably temporary, are there any other CJA

20    counsel on the case or is everybody retained?

21            MR. FISCHETTI:  Mr. Ting, your Honor, I'm standing up

22    for him today, with his consent.  He's read the indictment and

23    I can go forward, I have his permission, but he's going to be

24    represented by other counsel because of a possible conflict I

25    have and I'm going to represent Mr. Mancuso.

D4JFTOKC

1              THE COURT:  But is his other counsel likely to be

2      appointed pursuant to the Criminal Justice Act?

3              MR. FISCHETTI:  No, your Honor.  He has financial

4      means.

5              MR. FISCHMAN:  Your Honor, it's my understanding and I

6      think it's raised based that nobody is standing up that there

7      are no CJA counsel present in the case other than Ms. Fink who

8      is only here for today.

9              THE COURT:  You should also be aware that, from my

10     order for today, is that my intention is to set a trial date

11     today.  Given the number of defendants in this case and I think

12     the possibility of finding a date if I defer that, I think it

13     makes sense to do that today.  I'm happy to defer to the

14     parties as to when it's appropriate to try the case leaving

15     enough time for counsel to make any motions and for me to

16     resolve them and to deal with any other matters that are

17     required between now and trial, but I do intend to set a trial

18     date and I want to emphasize and will emphasize again that the

19     trial date I set is going to be a firm date.  That being said,

20     it should be obvious, certainly to the lawyers who know the

21     law, I'm sure it's obvious that if there are 34 defendants or

22     33 defendants still in the case when that trial date comes,

23     they're obviously not all going to go to trial together and I

24     obviously will deal with the issue of severance based on the

25     number of defendants alone if or when that becomes necessary.

D4JFTOKC

But my intention is to defer that issue until later and closer
to trial on the theory that some defendants may enter a plea
and by the time we get to trial we may not have too many to try
in one case, but we'll deal with that when it comes.

          For today's purposes I intend to set a trial date and
everybody here should assume that they will go to trial on that
date.  Again, in the event we need to deal with the issue of
severance based on the number of defendants alone we'll deal
with that at a later time.  I also will set a motion schedule
but we'll deal with that once we have resolved the issue of
trial.

          I recognize, of course, that there are many of you and
probably much has been going on in the last few days, so I
don't know what opportunity you had to discuss when a trial
date would be appropriate, but, Mr. Fischman?

          MR. FISCHMAN:  Your Honor, I've only had the
opportunity --

          MR. SKINNER:  Your Honor, sorry for the interruption,
Peter Skinner for the government.  I had a previously scheduled
appearance before Judge Gardephe at 2:30.  Since my colleagues
have this well in hand, I ask to be excused.

          THE COURT:  You're excused.

          MR. FISCHMAN:  Your Honor, we've internally discussed
the matter and the government feels that a trial date in
February of 2014 is, while admittedly it's somewhat in the

D4JFTOKC

1    offing, it's not, we think given the size of the case and the

2    size of the discovery, that should provide a large enough

3    window for motion practice and hopefully to thin the case down

4    to a size that will be triable at that time.  We haven't had

5    the opportunity to talk with all defense counsel about this, as

6    some defense counsel have really just come into the case in the

7    last few hours, but we've spoken to a few and that's what we

8    shared with them, that we think will be a reasonable time to do

9    the trial.  If your Honor felt it should be moved up a little

10   bit, obviously the government will make itself available

11   whenever your Honor orders.

12           THE COURT:  I know this this would be hard to estimate

13   at this time given the number of defendants who are to go to

14   trial, but what's your best guess as to the length of this?

15           MR. FISCHMAN:  Given what we know now, the government

16   thinks one month or two months.

17           THE COURT:  Mr. Brafman?

18           MR. BRAFMAN:  Yes, your Honor.  Benjamin Brafman for

19   Hillel Nahmad.  I very much appreciate that the Court has

20   issued an order that you intend to set a trial date and I don't

21   intend to press the issue but your Honor may reconsider after I

22   make my brief remarks, and I ask your Honor to just consider

23   the following, which I think is a reasonable although certainly

24   not controlling application.

25           Many of the lawyers in this case have met for the

D4JFTOKC

1    first time about an hour ago.  Some of us have never met.  Some

2    of us have had brief conversations with the government, very

3    brief conversations with the government.  Some of the lawyers

4    don't even practice in this jurisdiction.  I understand if you

5    don't set a trial date you may never set a trial date because

6    lawyers actually get involved in other cases.  But what I would

7    ask the Court is to have a status conference either 30 or 60

8    days from now.  I think the case will shake itself out to some

9    degree by then at least so that lawyers will know where their

10   clients fit into the equation, how many calls actually apply to

11   them.  If we all sat down and just tried to listen to 25,000

12   calls between now and February 14 I'm not certain we could

13   complete that process even if we did nothing else.

14          So my question, my suggestion, with great respect, is

15   if we meet again in short order, like four, six, eight weeks, I

16   think we would then be in a position to ask for a trial date

17   that is really reasonable.  If we agree to a February trial

18   date now, Judge, I don't know who is going to be on the trial.

19   We don't know if all of us are going to be on the trial on that

20   date and to the extent that you lock us into a February 14th

21   trial date and it turns out that the government splits up the

22   case and our clients are not in the first trial, what happens

23   as a practical matter is that lawyers who have active practices

24   get locked out of other cases by virtue of a trial date that

25   then is an artificial trial date.

D4JFTOKC

1          So my application is that you defer setting a trial

2     date just so we can confer with the government, maybe come to

3     you with a plan that we both agree on subject to your Honor's

4     approval.  Not looking to avoid the trial, just not looking to

5     essentially make up the date.  I also think that if everyone in

6     this courtroom decides to go to trial, I think a one or

7     two-month estimate is sort of, like, ridiculous with all

8     respect, because I've been in those cases and I think you're

9     looking at three, four, five months.  It takes an hour for

10    everyone to put their notice of appearance on the record.  So

11    that's my application.

12         THE COURT:  I heard you.  Your application is denied.

13    I intend to set a trial date.  Anyone else wish to be heard on

14    the question of the date?

15         MR. CHESNOFF:  David Chesnoff.  Your Honor, I

16    respectfully submit that the government had an extensive period

17    of time to get prepared and, in fact, the fact that the

18    government was able to announce today that it would put us in a

19    position to get all the Title 3 materials means they spent an

20    enormous period of time already doing that and I would suggest

21    that if the Court set a trial date it would be at least a year

22    from today's date with 25,000 tapes.  That takes us into April,

23    which is a couple of months past the February date being

24    suggested now, but I've been in many extensive wiretap cases

25    and I'm seeing some of the lawyers here that I do know, even

D4JFTOKC

```
 1    though I'm from other places, I know extensive motion practice

 2    is going to take place, there's going to be a lot of issues

 3    with the application for the wiretaps, so I would ask you to

 4    set it out a year, your Honor.  Thank you.

 5              THE COURT:  Anyone else wish to be heard?

 6              MR. BACH:  Michael Bach on behalf of Michael Mosseri.

 7    My application is related to the trial that is for defendants

 8    who are at the bottom of the indictment, like Mr. Mosseri, who

 9    are not in the RICO-related counts.  To go through 25,000 calls

10    where we may be in a hundred, 150, would be a monumental waste

11    of time.  I ask the government in order to facilitate whatever

12    date your Honor is going to set, I believe it should be way

13    off, to index those calls as much as possible for the

14    defendants who are on the bottom in a hundred or 200 or 300

15    calls, give us an idea of where we are so we don't have to sift

16    through 25,000 calls to get to a hundred of them.

17              THE COURT:  With respect to that I'll say a few

18    things.  I'm guessing they would give you line sheets that will

19    be text searchable and you will be able to search for your

20    clients on the wires.

21              MR. FISCHMAN:  That is correct, your Honor.

22              THE COURT:  Number two, I would ask with respect to

23    any application of that sort that you first confer with counsel

24    on an effort to resolve it on your own before bringing it to my

25    attention.
```

D4JFTOKC

1           Number three, at some point in this case when we get

2      closer to trial, I may well require the government to designate

3      essentially the calls it intends to use as exhibits at trial if

4      we're there.  We're not there at this juncture and for now I

5      think it's better left for you to confer with one another to

6      identify what you need to identify for your client's sake, but

7      at some point we will address that.

8           Anything else regarding trial dates?

9           MR. SCHNEIDER:  Jeremy Schneider for Dmitry

10     Druzhinsky.  I would ask that the trial date be pushed back

11     after April.  I have a trial scheduled before Judge Forrest,

12     numerous terrorist trial, it will require foreign testimony,

13     discovery that pales in comparison with this case.  I noticed

14     how much discovery there was in that case, moved it to

15     March 2014.  That will last a month, maybe six weeks I expect

16     to be preparing for that trial, this trial, separate and apart

17     from any other trials I might have.

18          Second of all, I agree with Mr. Bach we should come

19     back in 60 days.  Could we take a vote in it?

20          THE COURT:  No.

21          MR. SCHNEIDER:  Just a suggestion.

22          THE COURT:  We live in a democracy, but this courtroom

23     is not a democracy.

24          MR. SCHNEIDER:  When you're dealing with so many

25     defendants, 37 defendants, so many lawyers, it takes a long

D4JFTOKC

1    time to find a date.

2              THE COURT:  That's precisely the reason we're doing it

3    today.  That's my view.  That's the way we're doing it.

4              MR. SCHNEIDER:  I won't waste any more time.

5              But also in discussing the schedule, the government

6    has indicated they haven't gotten stuff from international

7    information we're looking for, so this is just a segment that

8    we will have of what's in their possession now.  They don't

9    even know about the computers and they don't have information

10   they wish to seize from international sources.  That becomes a

11   problem logistically for defense lawyers.  Even if we listen to

12   all these calls or do whatever they want us to do, we have to

13   deal with it in three months or four months because we still

14   haven't gotten it.

15             I would ask we set a trial date in May or June of next

16   year at the earliest.

17             MR. BACH:  Jonathan Back appearing for Mr. Golubchik.

18   On the assumption I might be continuing, I want to discuss the

19   trial date.  Mr. Golubchik is a subject of the wiretaps.

20   25,000 conversations before you even get to the wiretaps.  I've

21   seen the list of the computers and the electronic equipment

22   that was seized from his home.  It spans two pages.  I'm sure

23   there are thousands if not hundreds of thousands of documents

24   on those computers.  It's going to take the government months

25   to image those, to produce them and then to search those and

D4JFTOKC

1    actually analyze those documents.  It's going to take more

2    time.  That's before you even get these very extensive

3    four-month-long wiretaps.  It's just not humanly possible to

4    have this trial, to be prepared for it by February 2014.  I see

5    it maybe at the end of the year.  I think if your Honor is

6    determined to set a trial date today it should err on the side

7    of having it far enough out so we can get all this work done in

8    a meaningful way and not have to change it.

9             THE COURT:  Anyone else wish to be heard?  I am

10   learning towards a June trial date, so if you wish to be heard

11   having heard that, please rise.  June, 2014, I should say.

12            All right, seeing no one else standing, I am going to

13   set trial in this matter for June 9, 2014.  I want to stress

14   again that that is a firm date and it is not going to change

15   and everybody here should assume that you will go to trial on

16   that date.  Again, we'll revisit the question of severance on

17   the basis of numbers further down the road, but I don't want

18   you to assume that there will be a severance or that you or in

19   the counsel's case your clients will be severed and go to trial

20   at a later time.

21            Now, to that end I want to note something for the

22   defendants.  If circumstances arise and you want or need to

23   change counsel, you are certainly welcome to make an

24   application for that, but the closer we get to trial the more

25   problematic and less likely it is that I will grant any such

D4JFTOKC

1   application.  So should there be any issue on the front of

2   representation it is within your interests to raise those

3   issues with me promptly.  I've already noted the potential

4   conflict and Curcio issues to be dealt with right now, but with

5   respect to anybody here if there are any issues on that front

6   you should raise them immediately and make sure you don't wait

7   until the eve of trial.

8        I will also note with respect to the government had

9   indicated, mindful of Mr. Bach's point, to the extent that

10  there is evidence not yet in your possession or to the extent

11  that you have evidence such as the computers that are in your

12  possession in particular, I warn you that if you disclose

13  materials and you do not disclose them in the manner that

14  allows the defendants to adequately review them, then you run

15  the risk of my precluding that evidence at trial.  So it's in

16  your interests to produce everything as quickly and as promptly

17  as you can.  Now, having set that date for trial, as I

18  indicated, I'm going to set a schedule for motions.

19       My intention is to set an outside date for motions,

20  which is to say a date by which any motions need to be filed.

21  I would welcome earlier motions if you have one to bring, in

22  which case all you need to do is send a letter to me proposing

23  a motion schedule and I'm happy to consider.  I'm happy to hear

24  anyone's objections or thoughts on this, but my plan is to set

25  a motion deadline of -- hang on -- Monday, December 2nd.

D4JFTOKC

Anyone wish to be heard on that?  Seeing nobody, I will set an

outside deadline for motions of December 2nd.

Government's opposition to any motion must be filed

within two weeks of the motion being filed.  In the event there

are many such motions and there are many issues, I will

consider granting an extension, but in the absence of those

circumstances the deadline is two weeks after it is filed and

the reply must be filed within a week of the government's

opposition.

If we need to hold any hearings on any motions those

hearings will be held early next year certainly with enough

time to prepare for trial depending on my rulings on the

motions.  Again I want to emphasize that that December 2 date

is an outside deadline for motions.  Often counsel will know

motions help in resolving cases so to the extent you're able to

identify motions earlier than that I will encourage you to

submit a proposed schedule to me and bring your proposed

motions earlier.

I want to remind counsel and particularly outside of

the district of this district's local Criminal Rule 16.1 which

governs motions regarding discovery and motions for bill of

particulars.  No such motion shall be considered unless it's

filed with an affidavit certifying that counsel has conferred

with government counsel in good faith to resolve by agreement

the issues raised by the motion without my intervention and

D4JFTOKC

1    that you've been unable to reach agreement and in the absence

2    of that affidavit I will deny any such motion for failure to

3    apply with the local rule.

4           A brief comment on the issue of bail.  With the

5    exception of I guess Mr. Mosseri and Mr. Edler, for whom I'll

6    address bail issues shortly, if there are any new bail

7    applications to be made, that is to say, if anyone consented to

8    detention without prejudice to making a bail application or if

9    there are any changes -- actually, just limiting it to that,

10   let's say, then I am going to refer any bail application in

11   those circumstances to the magistrate judge.  If, however, a

12   defendant has been released on bail and it's just a question of

13   modifying the bail conditions, then you should bring those to

14   me.  In the event I want to refer it to the magistrate I'll let

15   you know, but in the first instance bring it to me.

16          I understand there are a number of defendants who were

17   presented outside of this jurisdiction and for whom bail was

18   set outside the jurisdiction.  Has bail been set here for those

19   defendants?

20          PRETRIAL SERVICES:  Good afternoon Judge, Jeff Stein

21   from pretrial services.  We have a number of defendants, I did

22   provide your deputy with some bail reports for the defendants

23   that were presented in other districts.  We have some paperwork

24   here.  We also have three defendants that did not show up to

25   pretrial services this morning, so we have some documentation

D4JFTOKC

1    from their original district.  I believe there's one defendant,

2    a Mr. Feldman, that we do not have any paperwork on.  I just

3    want to let your Honor know whether you address bail today or

4    if you refer to the magistrate judge.  I'm not sure what your

5    practice is, if you're just going to continue bail how it was

6    set in another district or if you're going to set bail.

7             THE COURT:  Yes.

8             MR. NAFTALIS:  Your Honor, the government has talked

9    with a few defense counsel.  Our proposal would be, for

10   example, for the L.A. defendants bail be continued, but we

11   intend to come back to your Honor with bail to be set by your

12   Honor just rather than since the papers are coming in and out,

13   you don't want to keep 34 people here to resolve those issues.

14   I think most of defendants are fine without it.

15            THE COURT:  So if you were to continue bail on the

16   same conditions set in whatever other jurisdiction it was set

17   for all defendants in those circumstances, is there any defense

18   counsel who wishes to be heard or has any objection to my doing

19   so?

20            MR. NAFTALIS:  Just to be clear, your Honor, we

21   believe that the Central District set -- some of them are quite

22   low and we're going to seek to increase them, but we think

23   everyone can go home today.

24            THE COURT:  To be clear, continue on the conditions

25   that were set for the time being to allow counsel to discuss

D4JFTOKC

1    the issue and for either counsel to raise the issue with me.  I

2    do think that conditions should be set more formally in this

3    district, whether by me or by the magistrate judge, so I guess

4    speak to the government.  I would ask with respect to each of

5    those defendants to make sure you come back to me at a minimum

6    just to confirm going forward that those bail conditions will

7    remain the same or to the extent that either side wants to

8    modify them that an application is made.  Okay?

9             Anyone wish to be heard on that?

10            MR. CHESNOFF:  Your Honor David Chesnoff.  There was

11   one thing, your Honor.  My client's only form of identification

12   is an item called a passport card.  He was given it back.  He

13   had it, he was released and he didn't use it for any purpose

14   other than getting on a plane to come here.  He wants to go to

15   DMV on Monday to get a driver's license or identification card

16   but he needs this in order to do it.  The only request I would

17   make is since he showed up and there were no problems that he

18   have until Monday to turn it in so he can go and get a

19   substitute identification.  He did post substantial bail in

20   California.

21            MR. NAFTALIS:  Your Honor, our proposal would be

22   Mr. Trincher surrender the card today.  If he wants to go to

23   DMV he and his counsel can go to pretrial, pick up the passport

24   and go to DMV and then return it.  We don't want him wandering

25   around with it.

D4JFTOKC

1            MR. CHESNOFF:  Your Honor, I'm happy to do that.

2            THE COURT:  All right, let's do that.  So you

3    surrender it today, I will allow you to pick it up on the day

4    he wants to go to the DMV for the purpose of getting other

5    identification.  It has to be in your presence and pretrial can

6    release it for that purpose and it can be returned to pretrial

7    on the same day.

8            MR. CHESNOFF:  Thank you very much, your Honor.

9            THE COURT:  Any problem with that?

10            PRETRIAL SERVICES:  No, your Honor.

11            Mr. KATZBERG:  Your Honor, Robert Katzberg for Moshe

12    Oratz.  There's an application on for bail, a condition we've

13    agreed to, that he be given an additional week, that is the end

14    of this month, the 30th, to secure the underlying security, to

15    secure the surety.

16            MR. NAFTALIS:  That's correct.

17            THE COURT:  All right, bail is modified in that

18    manner.  Anyone else?

19            MR. WANGER:  Yes, your Honor.  Bruce Wanger on behalf

20    of Peter Skyllas.  We had a deadline today to produce a

21    financially responsible person.  I spoke to Mr. Fischman prior

22    to this hearing.  He consented to give me another week of time

23    to produce a second financially responsible person, so I'm

24    asking the Court for that additional week of time for the

25    financially responsible person.

D4JFTOKC

1           THE COURT:  Any objection?

2           MR. NAFTALIS:  No, that's correct, your Honor.

3           THE COURT:  All right, application is granted.  Anyone

4    else?

5           MR. CARONNA:  Your Honor, on behalf of my client

6    Mr. Azen, obviously my client is still in custody.  Obviously,

7    the magistrate set conditions for his release and as of this

8    afternoon he has secured four sureties for his property and I

9    have prepared a confession of judgment together with the

10   appropriate affidavit that I would like to produce to the

11   government for their consideration so my client could be

12   released hopefully as early as today.

13          THE COURT:  I will leave it for you guys to discuss.

14   It's not up to me.  If he meets his conditions, he's released.

15          MR. BACH:  Michael Bach on behalf of Mr. Mosseri.

16   Your Honor, mr. Mosseri's part of the bail conditions is he was

17   supposed to return some property that was removed from a safety

18   box before his arrest.  It was supposed to be done by the end

19   of today.  We tried to do it yesterday, at no fault of the

20   United States Attorney when he went to the bank to make the

21   deposit he was met by seven police officers of the NYPD, it was

22   surrendered and then he left.  We would ask if we could have

23   another week to produce that.

24          THE COURT:  Any objection?

25          MR. FISCHMAN:  No, your Honor.

D4JFTOKC

1              MR. CHABROWE:  Jeffrey Chabrowe for Stan Greenberg.  I

2     spoke to Mr. Naftalis before we started.  We have three people

3     for the $750,000 bond.  Two of them are on their way down right

4     now to meet in St. Andrews.  I believe one of them is in Miami.

5     We're trying to coordinate that person for the United States

6     Attorney to meet down there, that may take a little time this

7     evening, being it's Friday afternoon.  I wonder if the

8     government would consider giving us time on that consideration

9     if the two were approved this afternoon.

10             MR. FISCHMAN:  Your Honor, given that the defendant is

11    still detained I'm not sure what the nature of the application

12    is.  If he's asking if we'll waive the requirement for the

13    third co-signer prior to the defendant being released, the

14    answer is no.  If there's something else that's being asked I'm

15    not sure what it is.

16             MR. CHABROWE:  We'll discuss it later.

17             MR. FISCHMAN:  Sounds like we can discuss it off line.

18             THE COURT:  Great.  Anything further?

19             PRETRIAL SERVICES:  Your Honor, good afternoon.

20    Robert Haft (ph) from pretrial services.  I just want to let

21    you know we have four defendants that we know of that have had

22    bail set in another district but have not been presented at

23    pretrial services today.  That is Peter Feldman, Noah Siegel,

24    Molly Bloom and Jonathan Hirsch.  If we could just ask your

25    Honor to direct them to report to pretrial services for an

D4JFTOKC

1    interview that would be appreciated.

2            THE COURT:  All right, those defendants are directed

3    to report to pretrial services after this proceeding for an

4    interview.  Again, conditions will continue for the time being

5    but with respect to every defendant for whom bail was set out

6    of the district I want you or the government to return for the

7    purposes of setting bail in this district as soon as possible.

8            Anyone else?  Yes, sir.

9            MR. SERNOVITZ:  Harvey Sernovitz for Michael Sall.

10   The travel conditions of his bail permit him to travel between

11   his home in Florida and to New York.  We would request for

12   permission for him to travel to Philadelphia so he can confer

13   with me in preparation for this case.

14           MR. NAFTALIS:  No objection, your Honor.

15           THE COURT:  All right, bail is modified in that

16   manner.  Anyone else?

17           MR. WANGER:  Yes, your Honor.  One last thing.  Bruce

18   Wanger on behalf of Mr. Skyllas.  I told the prosecutor also

19   prior to the court appearance my clients has tickets,

20   originally a planned trip scheduled to Puerto Rico the 25th of

21   April until May 2nd.  I ask the prosecutor if he would consent

22   to him going.  He said he wouldn't at this time so I'm asking

23   the Court's permission, permission for him to travel.  I have

24   the itinerary, I have all the information in a letter which I

25   can supply to the Court, supply to the United States Attorney.

D4JFTOKC

1          THE COURT:  I will deal with that separately.

2          MR. WANGER:  Okay.

3          THE COURT:  Anything further?

4          MR. FISCHETTI:  Your Honor, Ronald Fischetti on behalf

5   of Mr. Ting.  From what I understand there may be an

6   application to extend his bail limits and perhaps to adjourn

7   the time he has to replace property.  Mine is more of a

8   question.  I'll deal with it with Mr. Fischman.  If we get

9   consent should we do it before the magistrate judge or should

10  we come before the Court?

11         THE COURT:  As I said at the outset, if anyone has

12  been sentenced to detention prior to making a bail application

13  I want you to go in the first instance to the magistrate judge.

14  If bail has been set and there's a question of modifying the

15  terms of bail you should come to me in the first instance.

16         MR. FISCHETTI:  Thanks, Judge.

17         THE COURT:  I want to say if there's an issue you

18  haven't yet raised with the government I want you to first do

19  that before bringing it to my attention, but if there's

20  anything that's ripe for my attention this is the time to bring

21  it to my attention.  Anything in that category.  Ms. Fink has

22  sat down.

23         MS. FINK:  No.

24         THE COURT:  Again, if you haven't conferred with the

25  government, please do so.  Anything else at this time?  All

D4JFTOKC

right, I am going to set a trial conference for this case.  I

will set it for March 13, 2014 at 3:00 p.m. for that proceeding

and for any other proceeding in the case.  I advise you very

strongly to check the docket.  We will post on the docket which

courtroom the proceeding will be held in.  That will depend

heavily on how many defendants are appearing for any particular

proceeding.  If it is a small enough number to fit in my

regular courtroom it will be in my regular courtroom which is

courtroom 1105 at 30 Centre Street, the Thurgood Marshal

courthouse.  If it is too large to proceed in that courtroom we

will proceed here.

            Counsel, yes?  You're not yet excused so have a seat

unless you want to say something.

            MR. NAFTALIS:  Your Honor, we have to set bail for

Mr. Edler.

            THE COURT:  Yes, I am going to.  I think even before

that I assume there's an application for exclusion of time

under the Speedy Trial Act?

            MR. NAFTALIS:  Yes, your Honor, to permit the defense

to review discovery and make any applications and requests I

guess through March 13.

            THE COURT:  If there are any objections from defense

counsel to exclusion of time under the Speedy Trial Act between

today and March 13, 2014, please raise your hand.  Seeing no

hands raised, I will exclude time on consent from today until

D4JFTOKC

1    March 13, 2014 at 3:00 p.m. I find that the ends of justice are

2    served by excluding that time and outweighs the best interests

3    of the public and the defendants in a speedy trial to allow the

4    government to produce the discovery it described and more

5    importantly to allow counsel and the defendants to review that

6    discovery, to consider and prepare any motions that they would

7    want to bring and for the parties to discuss potential

8    dispositions of the case short of trial.

9          I want to note a few things.  Number one, we didn't

10   get to start on time today in part because there was a lockdown

11   in the courthouse and I myself was locked out of the

12   courthouse.  Future proceedings I intend to start precisely at

13   the time that I set and I would ask counsel and the defendants

14   to be here in advance of that time so that we can start on

15   time.

16         Number two, I would direct all counsel to my

17   individual rules and practices for criminal cases.  It's

18   available on the website.  Many of the questions that you might

19   have, for example, with respect to routine applications and the

20   like may well be answered there, so please look there in the

21   first instance before calling.

22         And, number three, just to repeat, for all future

23   proceedings check the docket to find out what courtroom we are

24   in.

25         I take it Mr. Mosseri's bail matter has been

D4JFTOKC

1   addressed.

2              MR. BACHNER:  Yes, your Honor.  It has.

3              THE COURT:  So you don't have to remain behind.

4   Mr. Fineman and his client should main behind and Mr. Edler and

5   his counsel should remain behind to address issues of bail.

6              Are there any other issues to be raised at this time?

7              MR. NAFTALIS:  Not for the government.

8              THE COURT:  And if there is for defense counsel,

9   please raise your hand?

10             MR. WANGER:  After the appearance, I was hoping that

11   we could address the vacation.

12             THE COURT:  What I'm going to do is step down from the

13   bench for five or ten minutes to allow those who do not want to

14   be stuck in this courtroom to get out.  Mr. Edler and his

15   counsel and Mr. Fineman and his client, as I said, should

16   remain behind.  If you need to discuss anything with the

17   government you can take the opportunity to do so and I will

18   take the bench again in about ten minutes to deal with those

19   two issues and anything else that needs to be raised.  Once

20   again, we are adjourned and I thank everybody for their

21   patience.

22             (Recess)

23             THE COURT:  All right, there's a little more room now,

24   so let's deal first with you, Mr. Fineman?

25             MR. FINEMAN:  Your Honor, what I want to make in terms

D4JFTOKC

1    of the application is this.  I don't want to leave the client

2    unrepresented for any period of time.  I had an opportunity to

3    speak with the client's wife yesterday and the way I became

4    involved in the matter is through another attorney that brought

5    me in to assist Mr. Trincher but I haven't worked out any kind

6    of retainer agreement with the client or the family and I have

7    been informed by the family that they are pursuing all avenues,

8    basically shopping around for attorneys and in the meantime

9    they have not said that I am not in consideration to be

10   retained, but I have not as of this time been retained and I

11   wanted to make the application to perhaps have a short

12   adjournment in the matter so that the family can decide whether

13   or not they're replacing me rather than continue to work on

14   this matter for an extended period of time at which point it

15   will be impossible for the Court to relieve me.

16        So I'd ask that perhaps the Court would consider to

17   adjourn the matter for a couple of weeks, maybe two to three

18   weeks when the family can make a final decision with respect to

19   representation and that way the matter can go forward with an

20   attorney who is fully assured he's going to be representing

21   him, there's an agreed upon retainer and the case can move

22   along that way.

23        THE COURT:  My proposal, which is not so dissimilar,

24   is to keep you for now so that he has counsel and basically

25   give the family or more importantly the defendant maybe two

D4JFTOKC

1   weeks to resolve the issue and if you have not been retained at

2   that point then I would entertain a motion to be relieved at

3   that point.

4              MR. FINEMAN:  Thank you.

5              THE COURT:  If there's new counsel in the next two

6   weeks then the proper motion for substitution of counsel can be

7   made.  So how about that?

8              MR. FINEMAN:  That's fine with me, your Honor.

9              THE COURT:  In the meantime, I don't see any reason to

10  put it on the calendar.  If you are retained then your notice

11  of appearance can go forward, carry on, and if there's a motion

12  for substitution of counsel, then we will have an appearance

13  for that purpose and if you make a motion to be relieved and

14  there is no new counsel then I will entertain and hear it if

15  it's made.  Basically you know how to find me and there's no

16  reason to set an appearance.

17             MR. FINEMAN:  That's fine, Judge.

18             THE COURT:  Two weeks from now it should be resolved

19  one way or the other and if I don't hear from you I will assume

20  you have been retained and there's no issue.

21             MR. FINEMAN:  Thank you, your Honor.

22             THE COURT:  With that, as far as I'm concerned,

23  Mr. Fineman, you can be excused.  I think in all likelihood the

24  marshals will keep your client here but I don't see any reason

25  for you to remain unless you would like to.

D4JFTOKC

1              MR. FINEMAN:  Thank you, your Honor.

2              THE COURT:  All right, turning to the issue of bail

3    for Mr. Edler, I'll hear first from the government.

4              MR. NAFTALIS:  Your Honor, I think I sent you a

5    proposal from Mr. Harris and the government.  The defendant

6    will be released today on his own signature on a $150,000

7    personal recognizance bond co-signed by two financially

8    responsible persons, the co-signer condition to be met within

9    one week; the defendant's travel restricted to the Southern and

10   Eastern District of New York and the District of Nevada and all

11   points in between for purposes of travel.  Regular pretrial

12   supervision.  The defendant to refrain from gambling activity

13   unless specifically approved by the Court.  No contact with

14   co-defendants, victims or witnesses unless in the presence of

15   defense counsel.  He is to surrender all travel documents and

16   make no new applications and he's to submit to a urinalysis

17   test and if it is positive pretrial would subject him to strict

18   supervision with drug testing and treatment.

19              THE COURT:  If there's a positive?

20              MR. NAFTALIS:  If there's a positive, yes.

21              THE COURT:  And any particular deadline by which he

22   would have to do the urinalysis?

23              MR. NAFTALIS:  As appropriate with pretrial.

24              PRETRIAL SERVICES:  Within 30 days, Judge.

25              THE COURT:  Ms. Harris or Mr. Fox?

D4JFTOKC

1        MR. FOX:  Your Honor, we have no objection.  That is

2    as we've discussed.

3        THE COURT:  Okay.  Upon review of the indictment and

4    the pretrial services report, I am okay with the joint bail

5    package, so defendant can be released today on his own

6    signature.  Bail will be set on the terms that the government

7    just articulated and correct me if I get this wrong, 150,000

8    personal recognizance bond co-signed by two financially

9    responsible persons and the latter condition to be met within

10   one week.  Travel restricted to the Southern District and

11   Eastern District of New York, as well as the District of Nevada

12   and travel in between for purposes of getting from one to the

13   other.  Regular pretrial supervision.  The defendant shall

14   refrain from gambling unless it's specifically approved by the

15   Court, which seems like an odd condition, but that's fine.

16       MR. NAFTALIS:  He lives in Las Vegas, so it's a little

17   bit of a Catch-22, I guess.

18       THE COURT:  He shall refrain from gambling unless

19   specifically approved by me.  He shall have no contact with

20   co-defendants, victims or witnesses unless in the presence of

21   counsel.  He shall surrender all travel documents and make no

22   new applications for such documents and he shall submit to a

23   urinalysis and in the event of a positive test he will be

24   subject to strict supervision with drug testing and treatment

25   as directed by pretrial services.  Did I get that correct?

D4JFTOKC

1           MR. NAFTALIS:  Yes, your Honor.

2           THE COURT:  Is there anything else -- I think we were

3    not aware coming here that there were any defendants in need of

4    being presented, and this, as you know, is not my normal

5    courtroom so I'm not sure my deputy has the necessary forms so

6    it may take a few minutes to just deal with the logistics of

7    getting it actually done.

8           Is there anything else we need to deal with,

9    Mr. Naftalis?

10          MR. NAFTALIS:  I don't believe so.

11          THE COURT:  Mr. Fox?

12          MR. FOX:  No, your Honor.

13          THE COURT:  In that case I wish everybody a pleasant

14   weekend and we are adjourned.

15          (Adjourned)

16

17

18

19

20

21

22

23

24

25