E3C9TOKC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4           v.                          13 CR 268 (JMF)

5  ALIMZHAN TOKHTAKHOUNOV, ET
   AL.,

6
                Defendants.
7
   ------------------------------x
8
                                       New York, N.Y.
9                                      March 12, 2014
                                       3:08 p.m.
10

11 Before:

12                    HON. JESSE M. FURMAN

13                                       District Judge

14
                          APPEARANCES
15
   PREET BHARARA
16      United States Attorney for the
        Southern District of New York
17 JOSHUA NAFTALIS
        Assistant United States Attorney
18
   RAYMOND GRANGER
19      Attorney for Defendant Ilya Rozenfeld

20 BRUCE WENGER
        Attorney for Defendant Peter Skyllas
21
   KRISTEN SANTILLO
22      Attorney for Defendants William Edler and Peter Feldman

23 PHYLLIS MALGIERI
        Attorney for Defendant Joseph Mancuso
24

25

1          (In open court; case called)

2          MR. NAFTALIS:  Good afternoon, your Honor.  Joshua

3     Naftalis for the government.  With me at counsel table is

4     Robert Hanratty from the FBI.  Thank you for allowing us to

5     start a couple minutes late.

6          THE COURT:  No problem.  Good afternoon to both of

7     you.

8          Gentlemen in the back would you please state your name

9     for the record and also indicate whether your client is present

10    and if so where.

11         I should note that two of the defendants, Mr. Edler

12    and Mr. Feldman, were granted permission by my order yesterday

13    not to be here today.  Ms. Santillo was granted leave, with

14    Mr. Feldman and Mr. Feldman's counsel's permission, to appear

15    on his behalf, in addition to Mr. Edler's behalf.

16         So having said that, please state your name and let me

17    know whether your client is or is not present.

18         MS. SANTILLO:  I'm Kristen Santillo on behalf of

19    Mr. Edler and Mr. Feldman.

20         MS. MALGIERI:  Good afternoon, your Honor.  Phyllis

21    Malgieri from Fischetti & Malgieri on behalf of Joseph Mancuso,

22    who is present behind me in the first row.

23         MR. WENGER:  Good afternoon.  Bruce Wenger on behalf

24    of Peter Skyllas, who is sitting in the corner front row here.

25         MR. GRANGER:  Good afternoon, your Honor.  Raymond

1  Granger on behalf of Ilya Rozenfeld, who also is present in the

2  first row behind me to my right.

3           THE COURT:  Good afternoon to all of you.

4           We are here for the second pretrial conference in this

5  case.  The number of defendants has been considerably weaned

6  from the initial appearance when there were 33 defendants

7  present.  We are down to five who have not pleaded guilty or --

8  well, who have not pleaded guilty.

9           The motion deadline in this case was extended, but the

10 deadline was ultimately a date in January.  Only one defendant

11 filed a motion, namely Mr. Rozenfeld.  Addressed the bulk of

12 the relief that he sought in that motion in a memorandum

13 opinion and order that was filed on Monday, but I reserved

14 judgment on the one aspect of the motion, namely the request

15 for a Bill of Particulars with respect to Count Eighteen.  So

16 why don't we just start with that.

17          I'm sympathetic to the request, at least in part,

18 because the indictment charges the defendant with a five-year

19 participating in a money laundering conspiracy that is alleged

20 to have lasted for at least five years and it doesn't specify

21 how many transactions were involved or give any details as to

22 which financial transactions were monetary instruments, or

23 funds, or the like the government alleges to have been

24 criminal.  Now part of the reason I didn't feel I could rule on

25 it -- in the opinion I think I made this clear -- is I don't

1    actually have a sense of what the universe of transactions here

2    is.  If we're talking about somebody who engaged in thousands

3    of transactions and of those thousands the government alleges

4    only a handful are potentially criminal, in which case I think

5    there's a lot to be said for putting the defendant on notice of

6    what those transactions are so that he can prepare a defense

7    and isn't left in the dark as to which of the thousands of

8    transactions he engaged in the government's theory is were

9    illegal.

10           Similarly, although there's arguments in the papers

11    with respect to the reverse proffer that took place:  Number

12    one, the government itself acknowledges that, quote unquote,

13    some of the transactions were explained to or detailed to the

14    defendant, which is to say even by the government's own

15    representations it does not -- that did not cover the universe

16    of the transactions that the government alleges to constitute

17    proof of money laundering.

18           Number two, I don't know how many transactions we're

19    talking about in that context either.  In other words, of the

20    universe if the government has provided information as to

21    98 percent of the transactions that it alleges to have been

22    illegal, then perhaps there is no need for a bill of

23    particulars.  But if it has selected, of the subset of the

24    transactions -- of the transactions that Mr. Rozenfeld engaged

25    in, there is a subset that I gather the government alleges were

1    illegal; and of that, if the government presented information

2    to Mr. Rozenfeld of only a small set, then I think there is a

3    much stronger argument for bill of particulars.

4         Let me also say that to the extent that the request

5    also seeks a bill of particulars with respect to the specified

6    unlawful activity and illegal gambling business aspects of

7    Count Eighteen, I'm less persuaded that there's a need here.  I

8    think the count does adequately put the defendant on notice

9    that the specified unlawful activity and illegal gambling

10   business relate to the alleged illegal gambling business in

11   which Mr. Druzhinsky was engaged.  And I think for that reason

12   the question here is simply whether the defendant has

13   sufficient notice as to the transactions that the government

14   intends to rely on, not the specified unlawful activity

15   component of it.  But I'm happy to hear argument on that point.

16        So having given you those preliminaries, why don't I

17   turn first to you Mr. Naftalis, if you can give me -- I guess

18   make whatever argument you want, but if you can answer those

19   questions that would be helpful.

20        MR. NAFTALIS:  Yes, your Honor.

21        I think the defendant is ignoring that we've given

22   them a lot of evidence.  I think it's hard for us to

23   communicate to you in a brief what happened at the reverse

24   proffer.

25        But just to set the backdrop.  In terms of discovery,

1    discovery is organized by account and defendant with respect to

2    bank accounts.  So Mr. Rozenfeld is able to go into the

3    accounts that he knows about, that we told him about;

4    carsUSA.com and LeaseMaster.  These were two companies that

5    were the money laundering vehicles.  So it's not like he needs

6    to review all the bank accounts for all the defendants.

7         He also knows, as we've told him, that the primary --

8    among the primary transactions to look at -- and we gave him

9    examples -- are transactions of a company called Titan.  It's a

10   different Titan than we've talked about with respect to most of

11   the defendants.  This is a Titan in Latvia.

12        THE COURT:  Not the plumbing company?

13        MR. NAFTALIS:  Not the plumbing company.

14        This is just a straight money laundering vehicle in

15   Latvia.  It's just a coincidence.

16        And the defendant knows this.  So if he wants us to

17   list out every time you see the word "Titan" in the bank

18   statement, that seems to be something the defendant is equally

19   capable of doing.

20        With respect to transactions of Mr. Druzhinsky and all

21   of the companies, which Mr. Rozenfeld is aware of since their

22   businesses are at the same address, he knows what they're

23   called.  Ocean Ave. Development.  Ivana Holdings.  These are

24   the things he knows the exact vehicles that the money was going

25   to.  So it's usually Titan into one of his car companies, then

over to Mr. Druzhinsky's shell accounts, which also -- most of those are shell accounts. Some of them I guess in theory may have had some legitimate business. And then all the people who he knows about, we told him about: Mr. Azen, Mr. Trincher, HMS, ACDelco, which is also another fraudulent business. It a has some legitimate business, but they are using car companies to launder money.

We told him specifically these are the types of companies you're dealing with. We told him that we know you're structuring. So if you look at transactions that are like $9,800, you might want to take a look at those. If you look at transactions that are like $250,000, you might want to look at those too. Because they are huge transactions for money laundering. They're all the small ones trying to avoid detection.

I think what the defendant wants us to do is four months before trial to literally go through the bank statements and send him a list of exhibits. We have narrowed it down. We have produced discovery in a very organized way. So to say that it's haphazard in some way -- I mean we can show your Honor the CD. It's more organized than any discovery I've ever seen. It's not Bates-stamped. Like you have to go through it. It literally says like "Rozenfeld accounts" or by defendant. You can just click in there. He knows the companies he worked at. And he can look at the bank statements himself.

1      I think there are about three million dollars-ish of

2 proceeds that were moving around.  This is not some gargantuan

3 task.  I think that the argument he is making is he doesn't

4 want to prepare for trial the way a normal defendant would be,

5 which is to review the evidence, which we did with him, and say

6 these are the people that are alleged to have laundered money

7 to and from and let's figure out if we have a legitimate basis

8 for them.  We don't think there is a legitimate basis.

9      I think what he wants us to do is basically -- this is

10 like an interrogatory in civil litigation.  Identify all

11 transactions you're going to use at trial.  And have us list

12 them out for him.  And then I guess at trial it would be like

13 well now let's talk about exactly what we know is going to

14 happen.

15      There is no great burden here.  It's been almost a

16 year since we indicted the case.  They've had the discovery for

17 a year.  The proffer was months ago.

18      And his piece of this case is small.  It's not like he

19 is laundering money for every single defendant in the case.  He

20 is in this little sort of world with Mr. Druzhinsky.  He knows

21 who his codefendants are.  We told him specifically what we're

22 looking at.  He knows this world.

23      We're not saying:  Make sure you look at your

24 transaction with Bill Edler.  These guys have nothing to do

25 with each other.

1      I'll be interested to hear what the great burden is

2 when Mr. Rozenfeld stands up.  Because his reply brief just

3 parroted back his same arguments which is things are

4 disorganized and it's really hard.  The case that I recall from

5 when we got our brief is, you know -- it's what's necessary to

6 prepare, not what's nice to prepare.  We're not supposed to

7 serve up the case on a silver platter, which is what he really

8 is asking for.

9      That's basically -- we can answer any questions, but

10 that's our basic view as to the bill of particulars.

11      THE COURT:  In your view, are all the transactions

12 that the defendant or that those companies that you cited, for

13 example Titan in Latvia, there's a car company that you

14 referenced, are all of those part of the money laundering

15 scheme, or were there a mix of legitimate and illegitimate

16 transactions that involve those entities?

17      MR. NAFTALIS:  There are a mix of legitimate and

18 illegitimate.  In some cases, the entire transaction is money

19 laundering.  In some cases they're inflating the price of

20 what -- it's a mix-up.  It's a Mercedes.  It was worth 40 but

21 let's wire 60 so that we can launder 20.  So it's two types of

22 it.

23      But the universe that they're looking at are the

24 people who we've gotten through.  Just to go back to the

25 reverse proffer.  We sat there and defense counsel literally

1  was writing down all the Bates numbers.  Can I get the session

2  number of the calls?  We gave him time to really sit there with

3  the documents and copy down the accounts we were looking at,

4  the Bates numbers of the transactions.  We were pointing him to

5  transactions.  We said to him:  There is no legitimate basis

6  for this transaction.  Look at the -- look at the call.  The

7  call is something to the effect of:  Don't send a round number.

8  So the next one isn't round.  We said:  Look, you guys are

9  following the instructions.  They know exactly what we're

10  looking at.

11       It wasn't like we went in there and said your company

12  is fraudulent and you've done some transactions and you have

13  the bank account.  We sat there with like the Chase Bank

14  account, or whatever it was, and said:  Look at this number.

15  Now let's look at the wire.  Here you are laundering money.

16  Now let's look at how you tried to do a better job the next

17  time.  Here you are still laundering money.  Here you are with

18  Titan.  Here you are with Mr. Druzhinsky's shell companies.

19       THE COURT:  By your own acknowledgment, that's a

20  subset of the transactions that you allege to be illegal.

21       I guess my question is -- I don't know if it's as

22  simple as buying a car.  But let's say that there are a

23  thousand transactions involving a car.  And your view is that

24  90 percent of those are legitimate but 10 percent were part of

25  the money laundering scheme.  That would raise the concerns

1    that I alluded to or mentioned earlier insofar as I think the

2    defendant would be entitled, particularly if there's a

3    voluminous number of transactions here, to have some sense --

4    to be put on notice of which transactions the government is

5    alleging were illegal so he can prepare his defense in

6    connection with those transactions, recognizing of course that

7    you did perhaps cherrypick the strongest transactions for your

8    purposes at the reverse proffer and in that regard give him a

9    lot of information about what a trial would look like.

10            MR. NAFTALIS:  What we told him, and we'll say again,

11   there are shell companies in Latvia and Cypress, Titan.  And

12   then there's ones in Cypress, for example, Maple Brook.  We

13   went through all of these.  These companies have no business

14   other than to launder money.  There are a smaller subset of

15   transactions which we may rely on, which could theoretically

16   have some legitimate purpose to them.  But the ones that we are

17   focused on, and we focused on with them, are the ones where

18   it's with the shell companies.

19            Maple Brook, for example, is a Cypress shell company

20   controlled by Mr. Golubchik and Mr. Trincher.  It has no

21   purpose other than to move money from Russia or the Ukraine to

22   Cypress, to the U.S., and back, and back again.

23            So we told them that.  I think we stood up in front of

24   your Honor at the first -- among the first conferences, we

25   tried to -- because we knew that there were a lot of names and

1    a lot of companies and we said:  The Trincher --

2    Taiwanchik-Trincher organization has a number of shell

3    companies, and we listed them all off.  It's been in all the

4    discovery.  It's in all the wire applications.  Maple Brook,

5    North Side.  These are companies that serve no purpose other

6    than to launder money.

7         When Mr. Rozenfeld was doing business with them,

8    that's money laundering.  They're not doing anything other than

9    moving money.  They mask it in this like car parts transactions

10   of these companies or cars, but there's nothing moving around

11   because these companies are literally gambling accounts.

12        If he wants me to highlight them for him, that seems

13   to me like I should be on the defense side.  That's what a

14   lawyer does.  They go through the discovery.  And they've been

15   told twelve times:  We think everything you do in these

16   companies is illegal.  Okay.  Go look for yourself.  Click on

17   the CD we gave you and flip through these bank statements.

18        It's not like he works at GE.  This is his car company

19   in Brooklyn, which does a little bit of business but it's, you

20   know, it's not like their bank statement for the month is

21   hundreds of thousands of pages.  It's like a normal small

22   company bank statement.  So flip through it and do your trial

23   prep.  That's sort of our position.

24        THE COURT:  Last question for you.  I don't know if

25   you've thought about or discussed with counsel whether you

```
 1   would -- whether I should set a deadline for the disclosure of
 2   exhibits that you intend to use at trial, but do you have a
 3   view on that and when it should be?  Because that is an
 4   alternative here.  Perhaps it just makes sense to give you a
 5   deadline by which you need to list whatever exhibits you intend
 6   to use and in that regard give some notice in advance of trial
 7   of what transactions you're principally relying on.
 8           MR. NAFTALIS:  I guess this brings us at what I think
 9   would be one of the conversations for today, which is
10   severance.  Our expectation is that Mr. Rozenfeld will probably
11   be tried with Mr. Skyllas, and that probably Mr. Mancuso would
12   have to be tried separately, just to tee that up.  I don't
13   think -- obviously Mr. Edler or Mr. Feldman are not going to be
14   going to trial.
15           So we're happy -- I don't know what your Honor's
16   practice is.  I think that a week before for exhibits is fair.
17   I don't think that there's -- and just to tee it up, I think
18   that his trial will be about a week or two, just so you know.
19           We're happy to disclose them early, but I don't think
20   it's really realistic or fair for us to have to disclose them
21   months early.
22           THE COURT:  It can't be many months since it's March
23   and the trial is scheduled for June 9.
24           MR. NAFTALIS:  I don't know if your Honor anticipates,
25   make it up.  3500 exhibits are due the Friday before, or if
```

1    they're due the week before.  I don't know what your Honor's

2    preference is.

3         I don't think that this trial requires -- this isn't

4    the Madoff case where you have to turn over the documents a

5    month early because there's that much to go through.  He's had

6    a year to go through them.  We're happy to do it early.  But I

7    don't think that a month's early deadline -- A., I can tell you

8    we're not ready to do it.  We're happy to do whatever your

9    Honor wants.  But we can ameliorate the issue by turning them

10   over a week earlier if you want.  Anything more than that seems

11   to be unnecessary.

12        THE COURT:  I do want to discuss the severance issue

13   and the schedule.  But sticking first to the bill of

14   particulars motion, why don't I hear from you, Mr. Granger.

15        MR. GRANGER:  Thank you, Judge.

16        First, Judge, I do want to thank you for the courtesy

17   you gave me during the motion practice.  There was a medical

18   emergency in the family and I greatly appreciate that.

19        Judge, I think it's interesting that Mr. Naftalis now

20   refers to Mr. Rozenfeld being but a small part of the

21   indictment because you'll recall during the briefing the

22   government referred to the 83-page speaking indictment as to

23   indicate that somehow the length and detail in the indictment

24   was informative as to the charges against Mr. Rozenfeld.

25        THE COURT:  You can put that aside.  I think everybody

1    acknowledges he's charged in Count Eighteen and the length of

2    the indictment and the number of other defendants charged has

3    no bearing on the issue here.

4              MR. GRANGER:  As to the reverse proffer to which

5    Mr. Naftalis refers.  Even as we speak today, the government

6    has not committed to using even any of those transactions.

7    You'll recall that in the briefing what the government said was

8    they showed us transactions that they would likely introduce at

9    trial.  So we're not even sure that those transactions are

10   going to be used.

11             THE COURT:  I got it.  Here is my question for you.

12   As you know, in a criminal case there's only so much discovery

13   you're entitled to and it's not like a civil case where you go

14   to trial knowing exactly what the other side or having a pretty

15   good sense of the way the other side is going to present its

16   case.  For better or for worse -- and certainly for most

17   defense lawyers in my experience, in their view for worse --

18   you're often in the dark of what the government's case is going

19   to look like until the eve of trial when you get the 3500

20   material and exhibits.  Here you have not only a reverse

21   proffer at which the government presented detailed information

22   as to some transactions, admittedly a subset of the

23   transactions that it presumably thinks was illegal, but by

24   Mr. Naftalis' description today has provided you with fairly

25   well organized discovery that essentially gives you the

universe of transactions at issue and identified most, if not

all, of the entities and individuals with whom transactions --

as to whom the transactions would be illegal, which is to say:

You have that material, you can go through it.  Granted, you're

a little bit in the dark as to which transactions the

government will rely on, but you certainly are on notice of the

universe of potentially illegal transactions and can prepare

trial as well as most defendants can prepare trial.  And then

if you get the exhibits a week or two weeks before trial,

you'll have a better sense and can zero in on those.  Why is

that not consistent with what the law requires?

MR. GRANGER:  Well, your Honor, I'll speak first to

what Mr. Naftalis has referred to as the "organized discovery."

Just to put this in context.  With respect to

discovery that the government has grouped as related to my

client and his coconspirators named in Count Eighteen, we have

counted 853 account statements.  Just with respect to that

subset, 853 account statements.  I had my staff start to

manually count other bank statements we have.  And we were not

able to finish as of today.  The counting stopped at 2,769 bank

statements.

I don't know if I'm hearing Mr. Naftalis say that

those other 2700 or 3,000 statements are not going to be part

of the case.  But until I'm told that for sure, we have to be

on top of all of that.

1          Now with respect to, again, the organized nature of

2     the discovery.  I don't know if Mr. Naftalis himself has dug

3     into it but I can tell you we've had tremendous problems.  When

4     you go into individual files for individual accounts we'll

5     sometimes find that, in fact, it contains account statements

6     with different numbers than other account statements in that

7     file.

8          So it's not quite as organized as he describes.  And I

9     say that in the sense that I'm not sure that he realizes that

10    when you get into the nitty-gritty discovery it's not as

11    organized as he may well in good faith believe.

12         You know, there's going to come a point, your Honor,

13    when we're at trial.  The government is going to go in front of

14    this jury.  And they're either going to list five transactions,

15    or ten, or fifty, or a hundred.  And they are going to say

16    these are examples of illegal transactions that make Ilya

17    Rozenfeld guilty of money laundering.

18         My point is it is simply unfair for that to be the

19    first day that we find out what those transactions are.

20         We have a tremendous task.  These some 3500 accounts

21    I've told you about are really just a minority of the documents

22    we have.  We have other tremendous discovery to go through.  We

23    have been working diligently for over a year.  Presumably so

24    has the government.  So we think it's not such a great burden

25    for the government to tell us which transactions unless the

E3C9TOKC

government itself has not decided which transactions it's going

to use, and that itself is significant in the context of this

discussion.

We're really just looking for the most basic

information:  Which transactions are illegal.

And as far as the nature of Mr. Rozenfeld's account,

if your Honor would like, I have pulled out of those 3500

statements six statements that relate to accounts controlled by

or used by Mr. Rozenfeld.  And I have also culled out one

statement related to -- I believe it's Delco Ukraine.  I can

hand these up to your Honor, if you want to get a sense of just

a single month's statement in what they're describing as this

non-GE business.  Get a sense of what we have to do.  We have

go through all of these transactions and guess which ones they

are going to use.

Sure.  We go to the reverse proffer.  They give us an

idea.  They say look at this, look at that.

THE COURT:  Can I interrupt for a second.  Because to

the extent that the universe of allegedly unlawful transactions

is maybe relatively large to begin with, if you get a bill of

particulars identifying what those are, you're still going to

be in the dark as to which transactions the government actually

proves at trial.  It's not required to prove each and every one

of the transactions in order to convict the defendant.  It's

presumably going to cherrypick and streamline its case and

1    identify some of the transactions.

2           So giving you the universe, how does that help you

3    when you presumably already have a pretty good sense of what

4    the government's case is going to look like from the reverse

5    proffer?

6           MR. GRANGER:  I'm not sure I understand your question

7    about the -- when you use the term "universe," what they've

8    identified as the universe of documents.  I'm not sure.

9           Because what I'm looking for is the transactions.

10          THE COURT:  No.  No.  I'm saying if I grant your

11   request for a bill of particulars and I say government you have

12   to provide a bill of particulars identifying any and all

13   financial transactions or monetary instruments and funds that

14   you allege to be part of the money laundering conspiracy.

15   Right.  They give you a list of -- I don't know what the number

16   would be, if we're talking dozens, hundreds, or thousands of

17   transactions and monetary instruments, presumably many of which

18   relate to Titan and Maple Brook and the other entities that

19   Mr. Naftalis mentioned that are alleged to be simply shell

20   companies.  That doesn't tell you what the government's case is

21   going to look like and you're still in the dark as to which of

22   those transactions they will prove up at trial.  So, yes, it

23   gives you notice as to the dozens or hundreds or thousands of

24   transactions that they allege to be fraudulent, but it doesn't

25   actually help you that much to prepare for trial.

1    So I guess given that it sounds like you have a pretty

2    good sense of what that universe is, even if you might have

3    some uncertainty at the edges, and I'm prepared to set a

4    deadline for the government to provide its exhibits to you,

5    perhaps more than a week in advance of trial, why doesn't that

6    suffice to prepare for trial?

7         MR. GRANGER:  Well, Judge, as to your first question

8    if we get the information, if you order -- if you grant our

9    motion and give us the particulars, we certainly will have a

10   lot of work ahead of us.  That's partly my point.  There's a

11   tremendous amount of work to be done.

12        If the government were to say these are a hundred

13   transactions that we believe are illegal and we're left to --

14   we don't know which ones they are going to pick out of that,

15   that still -- it puts me in a much different position than

16   going through, even with respect to the files that have been

17   designated as relating to the coconspirators in Count Eighteen,

18   to leave me guessing as to 853 statements and going through and

19   guessing as to which transactions.

20        So I would still have a lot of work ahead of me, but

21   it would be a -- it would be a tremendous help to prepare for

22   trial to at least get me in the ballpark.  Because I know it's

23   going to be among these hundred, maybe 50, maybe 20, maybe 5,

24   then I know it's not the tens of thousands of other

25   transactions that are out there.

1          THE COURT:  No one quarrels with the fact that it

2     would be helpful, but under the law it has to be more than

3     helpful.  It has to be necessary.

4          So, Mr. Naftalis, can you enlighten me what these 853

5     alleged statements are?  From your description I didn't quite

6     have the sense of it being so voluminous.

7          MR. NAFTALIS:  I'm honestly not clear what he's

8     looking at, sitting here offhand.

9          (Pause)

10          MR. NAFTALIS:  I'm talking to Agent Hanratty.  I think

11     there are only five hundred counts in the whole case.  If he

12     wants to look at all five hundred counts, that's fine.  We've

13     already said to him we don't think they're all relevant.

14          I think I just gave a bill of particulars standing

15     here.  That's all that would be required.  This isn't a mail

16     fraud charge where I have to identify each mailing to prove up

17     money laundering.  Money laundering -- we can show examples of

18     it and that's how you prove the case.

19          So he is aware of what transactions generally we may

20     prove.  We've given him specific ones.  We've told him how we

21     think they work, the parties involved, the specific accounts,

22     the dates, references to the wiretap, the people he's doing it

23     with, why we think they're illegal, which way the money goes,

24     which way it doesn't.

25          THE COURT:  If you had to estimate the number of

1  transactions that you believe were involved in the conspiracy,

2  what number are we talking about?  Are we talking dozens,

3  hundreds, thousands?

4          MR. NAFTALIS:  This is just -- don't hold us to it.

5          THE COURT:  I understand.

6          MR. NAFTALIS:  Like in the neighborhood of like a

7  hundred.

8          THE COURT:  Of those how many would have some

9  connection to Titan, Maple Brook, and the other shell companies

10 that you've mentioned have no legitimate purpose.

11         MR. NAFTALIS:  The majority, if not all of them.

12         I think that what we are jousting over is what's

13 called trial preparation.  And what Mr. Granger wants us to do

14 is literally say September 2, 1999, $50,000 illegal because

15 whatever.  As opposed to just looking at the account statements

16 himself and talking to his client and saying why don't you tell

17 me why you did this transaction.  That's what I thought lawyers

18 do.  It's an adversarial process where I don't have to prepare

19 him for my case.  And the issue is whether he -- he now is on

20 notice.  We've given him so much notice.  This is the only

21 defendant who claims he doesn't know what the case is about.

22 We've spoken to every other defendant.  We've had them in.

23 They say:  What's the proof?  Help me look at the wiretaps.

24 Tell them listen to this wire.  This one is relevant to you.

25 Look at these documents.  Everyone else gets the case.  Somehow

1    Mr. Granger claims he doesn't understand what's going on.  But

2    he has the time to count all the account statements for you and

3    say:  Judge, I counted two thousand but I didn't actually look

4    at what any of them say.

5            They're on a CD.  Run a search.  They're on a CD.

6    Print them out.  Compare them to the dates on the wire.  That's

7    I think what you're supposed to do to prepare for trial so you

8    can cross-examine.

9            THE COURT:  Are the accounts text searchable, the

10   statements?

11           MR. NAFTALIS:  Yes.

12           THE COURT:  I've heard enough.

13           Under Rule 7(f) of the Federal Rules of Criminal

14   Procedure I have discretion to order a bill of particulars

15   where the charges of the indictment are so general that they do

16   not advise the defendant of the specific acts of which he is

17   accused.  United States v. Torres, 901 F.2d 205 at 234 (2d Cir.

18   1990).  A motion for a bill of particulars should be granted

19   only if necessary to allow the defendant to "prepare for trial,

20   to prevent surprise, and to interpose a plea of double jeopardy

21   should he be prosecuted a second time for the same offense."

22   United States v. Panza, 750 F.2d 1141 at 1148 (2d Cir. 1984).

23   A bill of particulars should not be ordered to force the

24   government to particularize all of its evidence.  United States

25   v. Cephas, 937 F.2d 816 at 823 (2d Cir. 1991).  Nor if

sufficient information has already been produced by the

government.  See United States v. Chen, 378 F.3d 151 at 163 (2d

Cir. 2004).  Ultimately the important question is "Whether the

information sought is necessary, not whether it is helpful."

United States v. Facciolo, 753 F.Supp. 449 at 451 (S.D.N.Y.

1990).  Applying those standards here, I am denying the motion

for a bill of particulars.  Although the motion did give me

pause for the reasons that I articulated, I think that the

indictment, combined with the discovery, combined with the

reverse proffer, combined with what Mr. Naftalis has stated in

open court today, that the defendant is on sufficient notice,

certainly can -- there is no issue raised with respect to his

ability to interpose a claim of double jeopardy in the future.

And I think that he has been provided sufficient notice of the

government's basic theory in what he has been charged

sufficient to prepare for trial.  Granted, trial preparation is

hard, and it certainly sounds like there are challenges here,

but I don't think they are out of the ordinary.  And it sounds

as if the defendant actually has been exposed, to a pretty

extraordinary degree, to the government's theory of the case

and what its case would actually look like at trial.

          To the extent that the defendant seeks specific

information about how the government will present its case

against him, including details about overt acts, about specific

transactions, and so forth, that level of detail is beyond the

1    proper scope of a bill of particulars.  See, for example,

2    United States v. Malena, 2013 Westlaw 2455922 at page four

3    (S.D.N.Y June 5, 2013) citing cases for that proposition.

4        The bottomline is, based on what I've heard and based

5    on the representations made about the discovery, the defendant

6    has been given sufficient notice of the transactions that are

7    alleged to be a part of this, can prepare for trial

8    accordingly, can search those records and identify the

9    transactions at issue and in all likelihood has already been

10   advised of or, you know, let in on what the government's case

11   would look like at trial.

12       I am also going to require the government to provide a

13   list of its exhibits in advance of trial and will require that

14   that list be provided to Mr. Rozenfeld, and to the extend that

15   Mr. Skyllas is tried together with him, I'll set a deadline of

16   two weeks prior to trial, which is longer in advance than most

17   cases and should give even more of an ability to prepare to

18   meet whatever alleged transactions or whatever transactions the

19   government alleges to be criminal here.

20       I would also note that the crime charged here is a

21   conspiracy and in that regard the gravamen of the crime is an

22   illegal agreement.  And in that regard, the government doesn't

23   have to prove any particular transaction.  It has to prove an

24   agreement and some overt acts, or maybe not even here, in

25   connection with that agreement.  Given that, I think that is an

E3C9TOKC

1    additional reason that it need not identify each and every

2    transaction.

3          So for those reasons the motion is denied.  That

4    disposes of the rest of Mr. Rozenfeld's motion.

5          Before we discuss the question of severance, and

6    trial, and other deadlines in advance of trial, Mr. Naftalis,

7    why don't you just -- is there anything else that I should be

8    aware of?

9          Do you want to talk to me about the status of these

10   cases?

11         As I understand it, Mr. Edler and Mr. Feldman have

12   been offered, at least by the U.S. Attorney's Office, deferred

13   prosecution agreements and barring some unexpected development

14   that their cases should be disposed of in that manner in the

15   near future; is that correct?

16         MR. NAFTALIS:  That's correct, your Honor.

17         THE COURT:  Anything else that you want to say either

18   with respect to those two defendants or the other three?

19         MR. NAFTALIS:  With respect to those two, I think

20   Mr. Feldman and Mr. Edler, I don't think we need to burden the

21   Court with that.

22         With respect to the other three --

23         THE COURT:  Do you have any expectation of the timing

24   on their end?

25         MR. NAFTALIS:  Usually takes -- you have to submit the

E3C9TOKC

1    request to pretrial.  And then it takes them 45 days to say if

2    it's okay.  I don't see any reason for pretrial to say no.  But

3    there's sort of the -- once we say yes, there's the court

4    saying yes.  I don't have any anticipation that we're going to

5    get a no.

6              THE COURT:  When is that -- I think in Ms. Harris'

7    letter she indicated that that 45-day deadline, if you will, is

8    coming up relatively soon.  Do you know --

9              MS. SANTILLO:  It's March 28, your Honor.

10             THE COURT:  As to both defendants or just Mr. Edler?

11             MS. SANTILLO:  As to both defendants.  And Mr. Edler

12    has an interview scheduled next week and we anticipate that one

13    will be scheduled shortly for Mr. Feldman.

14             THE COURT:  Very good.  So that should be resolved in

15    the near future, it sounds like.

16             Very good.  As to the other three, anything?

17             MR. NAFTALIS:  As to the other three, just I'll -- we

18    agree that severance with respect to -- Mr. Mancuso should be

19    severed from Mr. Skyllas and Mr. Rozenfeld.  I think that

20    Mr. Mancuso's trial is like a week.  The Rozenfeld/Skyllas one

21    is probably, I think to be safer, it's a week to two weeks.

22             THE COURT:  Talk to me about why those two should be

23    tried together given that they're -- what the connection is

24    between the charges against those two since they're charged in

25    separate counts as well.

1      MR. NAFTALIS:  In retrospect, your Honor, maybe we

2   should just -- I think severance as to all three of them.  The

3   proof overlaps more between Mr. Skyllas and Mr. Rozenfeld.  I

4   think probably all defendants would be happier being severed

5   anyway.

6      THE COURT:  I don't think that's the standard.

7      MR. NAFTALIS:  The proof between them -- I mean

8   they're both in the money laundering basket, which is why I'm

9   thinking about them that way.  But the proof is really --

10  Mr. Skyllas is in the HMS money laundering world with

11  Mr. Nahmad and Illya Trincher; whereas Mr. Rozenfeld is more on

12  the Mr. Druzhinsky, Mr. Golubchik world.  They touch.  But I

13  think -- I think if they're -- they should be severed too.  I

14  think it's probably -- it would get a little confusing for the

15  jury to hear all about Druzhinsky; whereas Mr. Skyllas has

16  nothing to do with him, really, and vice versa.  Noah Siegel

17  has nothing to do with Mr. Rozenfeld.  These worlds all overlap

18  but the proof wouldn't be -- wouldn't overlap with respect to

19  the money laundering really.  It would be in the nature of

20  background as to how these conspiracies work.

21      THE COURT:  Counsel, hear thoughts on the question of

22  severance?

23      MR. GRANGER:  Judge, I appreciate Mr. Naftalis'

24  statement.  I think that is appropriate.  I think that there's

25  really very -- I'm not going to say very little.  No connection

1    really between my client, Mr. Skyllas, or the other defendant.

2    I concur in Mr. Naftalis' analysis.

3    MR. WENGER:  Your Honor, I too.  I don't think there's

4    any relationship with Mr. Rozenfeld and Mr. Skyllas and with

5    Mr. Mancuso.  And I think obviously severance is warranted

6    here.

7    MS. MALGIERI:  With respect to Mr. Mancuso, your

8    Honor, we believe that he has no connection either.  And we are

9    prepared to go forward with trial if he is alone.

10   THE COURT:  Anyone have any views on who should go

11   first?  If I were to sever all three defendants?

12   MS. MALGIERI:  We have no objection to going first,

13   your Honor, Joseph Mancuso.  We're in the process of discussing

14   a disposition with Mr. Fischetti and Mr. Naftalis.  But if

15   we're unsuccessful in obtaining what we're asking for, we're

16   prepared to go to trial first.

17   THE COURT:  Mr. Naftalis, do you have a view on the

18   order of things?

19   MR. NAFTALIS:  I don't think the order necessarily

20   matters.  I had always thought about Mr. Rozenfeld going first.

21   But there's really no magic behind it other than I think it's a

22   longer trial.

23   THE COURT:  Would it still be one to two weeks even if

24   his case were tried separately from Mr. Skyllas?

25   MR. NAFTALIS:  I think so.  I think it's one of

E3C9TOKC

1    those -- it's like a five-day, six-day trial, not a ten-day

2    trial.

3            THE COURT:  How long would you expect the Skyllas

4    trial to be?

5            MR. NAFTALIS:  I think his is like a week.  His is

6    just less -- Mr. Rozenfeld is just more -- it's not that it's

7    complicated but you have to explain the moving around a little

8    more of the money; whereas Mr. Skyllas, it's a little easier to

9    present.  I don't think that the Mancuso one is terribly

10   complicated to any of us.  So that one I think we would all

11   agree we could get done in a week.

12           THE COURT:  Do you agree?

13           MS. MALGIERI:  Yes.

14           THE COURT:  All right.  Anything else with respect to

15   trials, trial dates, etc.?

16           MR. NAFTALIS:  Our only preference would be if your

17   going to -- I guess right now we sort of dominated two months

18   of your Honor's schedule.

19           THE COURT:  You have.

20           MR. NAFTALIS:  If you're going to release some of the

21   dates, leave a couple of weeks between them just so that, as we

22   roll between the two, if they all go, if one of them goes too

23   long, we have some cushion, and we also have a little bit of

24   time to prepare for the next one.  We're pretty indifferent as

25   to the timing.

1        I think if Your Honor thinks one is going to go, I

2    think that Mr. Rozenfeld is the most likely to go, compared to

3    Mr. -- just based on the bill of particulars.  They seem

4    prepared to go to trial, or more than prepared to go to trial.

5    So I think that one will go.  So why not just do that one

6    first.

7        THE COURT:  Anyone else before I begin to give you

8    some specifics?

9        All right.  Let me tell you the following.  I'm going

10   to start with the Rozenfeld trial.  And although I had set

11   trial down to begin on June 9, I'm going to push it back one

12   week to June 16 in part because I will be out some of the week

13   of the 9th so it doesn't really pay to start that week.  So

14   Rozenfeld trial will start June 16 and continue I guess until

15   it ends, presumably sometime the following week.

16       The next trial will be the Mancuso trial -- actually

17   check that.  I'm going to go with the Skyllas trial next.  And

18   we will begin on July 14 -- actually check that.  We will begin

19   on July 15, which is a Tuesday.

20       The last trial will be the Mancuso trial which will

21   begin on August 4.

22       My general practice is to issue an order about two

23   months prior to trial setting deadlines for the filing of

24   proposed voir dire, requests to charge, and motions in limine

25   and the like.  Is there any reason not to just adhere to that

1    practice here, which is to say not do that today but simply

2    issue an order two months before each of these trials?

3              MR. NAFTALIS:  That's fine, your Honor.

4              MR. GRANGER:  That's fine, your Honor.

5              MR. WENGER:  That would be fine, your Honor.

6              MS. MALGIERI:  That's fine, your Honor.

7              THE COURT:  And I've already said that exhibits should

8    be provided two weeks prior to trial at least as to

9    Mr. Rozenfeld.

10             Is there a similar need in the other trials?

11             MR. WENGER:  We would love for that to happen, your

12   Honor, in our case also, your Honor.

13             THE COURT:  I'm not sure that's the standard either.

14   Mr. Naftalis do you have a view on the question as to

15   Mr. Skyllas and Mr. Mancuso?

16             MR. NAFTALIS:  I don't think it's necessary for either

17   of them, your Honor.

18             THE COURT:  Why?

19             MR. NAFTALIS:  Other than they'd like it, that doesn't

20   mean they're entitled to it.

21             THE COURT:  Understood.  I just said that myself.

22             MR. NAFTALIS:  Why don't we prepare -- we'll

23   potentially just be rolling off the Rozenfeld trial.  I also

24   think it's a more limited -- the Skyllas issues are not diving

25   through bank statements.  It's more in the nature obviously

1    of -- it's just not the same kind of proof where he needs some

2    advanced look to say that he wasn't ready.  I mean I didn't

3    hear anything to exactly what your Honor said other than he

4    likes the idea because Mr. Rozenfeld got it.  But that's not

5    the standard, as your Honor knows.

6              THE COURT:  I'm going to give Mr. Rozenfeld two weeks;

7    that is to say, the government needs to disclose its exhibits

8    or at least a list of its exhibits two weeks prior to his

9    trial.  And I will set a deadline for a similar list in the

10   other cases of a week prior to trial.

11             And as to other deadlines, I will set those by order

12   approximately two months before each of these trials.  And in

13   that order, I will also set a time for a final pretrial

14   conference.  But you should assume that that would be about a

15   week before the trial is set to begin.

16             Anything else that we need to deal with today?

17             MR. GRANGER:  If I may, your Honor, I just want to

18   mention to the Court that Mr. Rozenfeld has indicated to me he

19   may retain other counsel for trial.  I told him that, in that

20   case it was incumbent upon me to say something to you because I

21   expected that you would want to instruct him that the trial

22   date is a firm date regardless of who he chooses as trial

23   counsel.

24             THE COURT:  I was about to do that and, in fact, I

25   believe I even did that at the first appearance but I will do

E3C9TOKC

1    that in a moment.

2              Anything else from you, Mr. Naftalis?

3              MR. NAFTALIS:  Your Honor, we'd move to exclude time

4    I'm not exactly sure -- actually I guess you've excluded time

5    through June --

6              THE COURT:  -- 9th.

7              MR. NAFTALIS:  I guess with respect to the Skyllas and

8    Mancuso ones; with respect to Mr. Skyllas through the 15th of

9    July and Mancuso through the 4th of August.

10             THE COURT:  Any objection, counsel?

11             MR. GRANGER:  No, your Honor.

12             MR. WENGER:  No, your Honor.

13             MS. MALGIERI:  No, your Honor.

14             THE COURT:  I will exclude time as to -- generally

15   speaking, there's a single clock in each case.  But to the

16   extent that this is a permissible thing to do, I exclude time

17   as to Mr. Rozenfeld through June 16.  I exclude time as to

18   Mr. Skyllas through July 15.  And I exclude time as to

19   Mr. Mancuso through August 4.  I find that the ends of justice

20   served by excluding that time outweigh the interests of the

21   defendants and the public in a speedy trial, to allow the

22   parties to discuss potential dispositions of each case without

23   a trial, and in the event that that does not happen, to allow

24   both sides to continue to review discovery and prepare for

25   trial and potentially to ensure a smooth continuity of counsel.

1        Let me repeat what I said at the initial appearance in

2   this case.  I have obviously changed the trial dates slightly

3   in part because we're not going to have one trial.  We will

4   have three separate trials.  But I want everybody here, both

5   counsel and the defendants, to understand that the trial dates

6   that I just set are firm trial dates and they are not going to

7   change barring some pretty extraordinary event or unforeseen

8   circumstances, which is to say that Mr. Rozenfeld should

9   understand and assume that he is going to trial on June 16.

10  Mr. Skyllas should understand that he is going to trial on

11  July 15.  And Mr. Mancuso should understand that he is going to

12  trial on August 4.

13       In connection with that and in reference to what

14  Mr. Granger said about Mr. Rozenfeld's potential desire to

15  either substitute or add new counsel, let me tell you that the

16  closer we get to that trial date the less likely it would be

17  that I would grant any request to substitute counsel because

18  that would inevitably have an effect on the trial date.  It

19  requires a lot of time to prepare for trial and some of the

20  argument we had today concerned how much time it might take to

21  prepare for trial in the Rozenfeld case in particular.  And no

22  attorney is going to come on a case and be prepared to try it

23  in a manner of weeks.  So if you desire to change counsel or

24  retain new counsel or if you become eligible for appointed

25  counsel, it is absolutely essential that you raise that kind of

1  thing with me sooner rather than later so that any new counsel

2  can have adequate time to prepare.  If it turns out that a new

3  lawyer would not have adequate time to prepare and it would, if

4  I were to allow it, require the trial to be moved, it's not

5  going to happen.  So you should understand that those trial

6  dates are firm and that they are not going to change.

7          Mr. Rozenfeld, do you understand that?

8          DEFENDANT ROSENFELD:  Yes, sir.

9          THE COURT:  Mr. Skyllas do you understand that.

10          DEFENDANT SKYLLAS:  Yes, your Honor.

11          THE COURT:  And Mr. Mancuso, do you understand that?

12          DEFENDANT MANCUSO:  Yes, your Honor.

13          THE COURT:  Anything further from counsel?

14          MR. NAFTALIS:  No, your Honor.  Thank you.

15          THE COURT:  Mr. Granger?

16          MR. GRANGER:  No, your Honor.

17          THE COURT:  Mr. Wenger?

18          MR. WENGER:  No, your Honor.

19          THE COURT:  Ms. Malgieri?

20          MS. MALGIERI:  Nothing further, your Honor.

21          THE COURT:  And Ms. Santillo?

22          MS. SANTILLO:  No, your Honor.  Thank you.

23          THE COURT:  Thank you for being here.  I know you were

24  a bit of a spectator, but I appreciate since you are still

25  technically in the case that you were here.  Thank everybody

E3C9TOKC

1    for their patience.  We are adjourned.

2              (Adjourned)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25