Maximilian A. Grant
Direct Dial: 1.202.637.2267
max.grant@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

# LATHAM&WATKINS LLP

January 28, 2020

**VIA ECF**

Hon. Jesse M. Furman
United States District Court Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Tokhtakhounov, et al.*, 13-cr-268 (JMF)
              *Latchable, Inc., et al. v. Steiner et al.*, 19-cv-7575 (AT) (KNF)

Dear Judge Furman:

      We represent Plaintiffs Latchable, Inc., Local Energy Technologies, LLC ("LET"), Luke Schoenfelder, and Brian Jones (collectively, "Plaintiffs") in *Latchable, Inc., et al. v. Steiner et al.*, 19-cv-7575 (AT) (KNF) (the "Civil Case"). Plaintiffs sued Defendants LET Investors Group, LLC ("LETIG"), Benjamin Steiner, Gerard Jeffrey, Noah Siegel, Jonathan Hirsch, and Nicholas Hirsch (collectively, "Defendants"). Defendants Siegel, J. Hirsch, and N. Hirsch were criminal defendants in *United States v. Tokhtakhounov, et al.*, 13-cr-268 (JMF) (the "Criminal Case"), over which you preside.

      Per (i) the Court's Individual Rules and Practices for Criminal Cases 2(C) and 4(A), (ii) in response to the January 16, 2020 letter from Mintz Levin P.C. (Criminal Case, D.I. 1369), and (iii) pursuant to the January 21 and January 23 orders of Magistrate Judge Fox (Civil Case, D.I. 65, Jan. 23 Minute Entry), Plaintiffs respectfully request an order granting relief from the protective order issued in the Criminal Case. Such an order will permit Defendants Siegel, J. Hirsch, N. Hirsch, and those Defendants' third-party law firms to produce information concerning Defendants Siegel, J. Hirsch, and N. Hirsch's criminal prosecutions—information that is relevant to Plaintiffs' pending civil RICO claims in the Civil Case. Plaintiffs seek the case files the Government produced to Defendants during their criminal prosecutions.[1] These documents were requested from Defendants on October 9, 2019, and from the Defendants' third-party law firms on December 17, 2019. *See* Civil Case, D.I. 57-1 (RFPs Nos. 20-22); *id.*, D.I. 56-1, 56-2, 56-3 (subpoenas for documents). To date, Defendants and their law firms have not produced any non-public documents responsive to Plaintiffs' requests.

---

[1] At a minimum, Defendants and their third-party law firms should produce all non-Title III materials in the criminal case files produced by the Government to Defendants.

LATHAM&WATKINS LLP

## I. BACKGROUND

Plaintiffs assert civil RICO claims in Counts Four and Five of their Complaint in the Civil Case. *See* Civil Case, D.I. 1 ¶¶ 120-134. Those claims relate to activities that led to the April 11, 2013 indictment of Defendants Siegel, J. Hirsch, and N. Hirsch in the Criminal Case. *See* Criminal Case, D.I. 2. Defendants Siegel, J. Hirsch, and N. Hirsch were charged with several crimes, including crimes stemming from involvement with a criminal organization called the "Nahmad-Trincher Organization," which involved racketeering and the collection of unlawful debts. *See id.* ¶¶ 25-30, 33-45, 49-50, 59-61; *see also* Civil Case, D.I. 1 ¶¶ 45-51. Defendants Siegel, J. Hirsch, and N. Hirsch ultimately pled guilty to the transmission of wagering information and conspiracy to commit wire fraud. Criminal Case, D.I. 447, 508, 528 (Transcripts of the Guilty Pleas of Defendants N. Hirsch, J. Hirsch, and Siegel, respectively). During the Criminal Case, these Defendants were represented by the law firms Steptoe & Johnson, LLP ("Steptoe"), Alston & Bird, LLP ("Alston"), and Mintz Levin P.C. ("Mintz") (collectively, the "Third-Party Law Firms").

On October 9, 2019, Plaintiffs served requests for production on Defendants in the Civil Case. Requests for Production Nos. 20-22 sought documents concerning Defendants Siegel, J. Hirsch, and N. Hirsch's criminal cases, including but not limited to the complete files from those Defendants' criminal prosecutions. *See* Civil Case, D.I. 57-1. Defendants have refused to produce any non-public, responsive documents. *See* Ex. A (attached).

On December 17, 2019, Plaintiffs served the Third-Party Law Firms with subpoenas for documents (the "Subpoenas"). *See* Civil Case, D.I. 56-1 (Steptoe Subpoena), 56-2 (Alston Subpoena), 56-2 (Mintz Subpoena). Each Subpoena included a single request for documents:

> All Documents and Things produced, given, or disclosed to You (including your lawyers) by the Government in connection with (i) the Indictment and/or (ii) Your representation of any of the Defendants.

*See id.*, D.I. 56-1 at 10; D.I. 56-2 at 10, D.I. 56-3 at 10.

The information Plaintiffs seek through their Requests for Production Nos. 20-22 and the Subpoenas is relevant to their civil RICO claims—specifically, to their allegations that the funds Defendants invested, and conspired to invest, in LET were derived from a pattern of racketeering activity and/or the collection of unlawful debts. *See* Civil Case, D.I. 1 (Counts Four and Five).

The Third-Party Law Firms objected to Plaintiffs' Subpoenas on the basis of the protective order in the Criminal Case. *See* D.I. 203 (the "Criminal Protective Order"). Steptoe and Alston, however, did not oppose Plaintiffs request for relief from that order. *See* Civil Case, D.I. 56-4 (emails between G. Renigar and S. O'Donohue), D.I. 56-5 (emails between J. Cambria and S. O'Donohue). Mintz and Defendants opposed such a request, although Defendants waived any objections to the Subpoenas because they failed to serve same or move to quash in a timely manner. *See* Fed. R. Civ. P. 45(d)(2)(B); Civil Case, D.I. 56-6 (emails between S. Rader and S. O'Donohue), D.I. 56-7 (emails between R. Rosberger and S. O'Donohue). The Third-Party Law Firms also served boilerplate objections to the Subpoenas. *See* Civil Case, D.I. 53 (Alston objections), D.I. 56-4, 56-8 (Steptoe objections), D.I. 56-9 (Mintz Objections).

On January 10, 2020, Plaintiffs submitted a letter to Magistrate Judge Fox in the Civil Case, requesting relief from the Criminal Protective Order. Civil Case, D.I. 56. Mintz responded to that letter on January 16, 2020, and filed its response in the Criminal Case. Civil Case, D.I. 61;

LATHAM&WATKINS<sup>LLP</sup>

Criminal Case, D.I. 1369. On January 21, 2020, Plaintiffs filed a reply in support of their letter requesting relief. Civil Case, D.I. 64. On January 21, and during a January 23 teleconference, Magistrate Judge Fox ordered that the instant discovery issues be presented to Your Honor. Civil Case, D.I. 65, January 23, 2020 Minute Entry.

## II. ARGUMENT

### A. Relief from the Criminal Protective Order Should be Granted

The Criminal Protective Order designates "[a]ll Title Three materials . . . provided to any defendant" as "Confidential Information," and states that such information "[s]hall not be disclosed in any form by the defendants and/or their counsel except as set forth in paragraph 2 below." Criminal Case, D.I. 203 ¶ 1. The Third-Party Law Firms refuse to produce any documents in Defendants Siegel, J. Hirsch, and N. Hirsch's criminal files based on these provisions.

As an initial matter, any non-Title III materials in the Defendants' criminal files are relevant and discoverable, fall outside the protections of the Criminal Protective Order, and must be produced. *See id.* ¶ 1. Furthermore, under the Criminal Protective Order, even Title III materials may be disclosed pursuant to an order from this Court. *See id.* ¶ 2(iv). And such an order is warranted here.

Civil discovery of documents from a criminal investigation may be granted where—as in the Civil Case—there is "both legal and factual support favoring disclosure," and "documents are sought to further legitimate purposes in connection with lawful investigations or judicial proceedings." *United States v. Manko*, No. 89-cr-91 (KMW), 1997 WL 107440, at *4-5 (S.D.N.Y. Mar. 11, 1997); *Sec. & Exch. Comm'n v. Everest Mgmt. Corp.*, 87 F.R.D. 100, 105 (S.D.N.Y. 1980) (ordering documents from a grand jury investigation disclosed for the "legitimate purpose" of a related civil proceeding); s*ee also In the Matter of Montauk Oil Transp. Corp.*, 1992 WL 131770, at *2 (S.D.N.Y. June 2, 1992) (ordering disclosure of documents from a criminal investigation to civil litigants). Defendants' criminal activities—as described in their indictment, record admissions, and guilty pleas—are pertinent to Plaintiffs' civil RICO claims. Those claims turn on whether the funds Defendants invested in LET were derived from unlawful conduct. And the documents Plaintiffs request from Defendants and the Third-Party Law Firms were used to create a presumption of probable cause that Defendants, among other things, committed and profited from racketeering offenses and the collection of unlawful debts. *See Kaley v. United States*, 571 U.S. 320, 328 (2014) ("An indictment fair upon its face, and returned by a properly constituted grand jury, we have explained, conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged.") (internal quotations omitted). Consequently, the documents Plaintiffs seek are relevant to, and will further the legitimate purposes of, the civil RICO claims pending in the Civil Case.

Discovery of the underlying evidence presented in the Criminal Case also will avoid duplicative, costly, or possibly futile efforts by Plaintiffs to recreate the Government's investigation. *See Everest Mgmt. Corp.*, 87 F.R.D. at 105 ("disclosure will save the parties in this action from costly, and perhaps futile, discovery of documents produced to the SEC or directly to grand juries"). Such discovery will not frustrate the purpose of the Criminal Protective Order, as Plaintiffs will treat any information produced by Defendants or the Third-Party Law Firms as HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY information—i.e., under the highest level of protection afforded by the parties' proposed protective order in the Civil Case. *See*

Civil Case, D.I. 41 (Proposed Stipulated Protective Order). And the possible existence of grand jury materials in the documents Plaintiffs seek is no impediment to the production of Defendants' criminal files. *See Manko*, 1997 WL 107440, at *3 ("When documents are sought for their own sake rather than to learn what transpired before the grand jury, and their release would not compromise the grand jury proceedings, Rule 6(e) does not preclude their disclosure."); *Conte v. Cty. of Nassau*, No. CV 06-4746 (JFB)(ETB), 2009 WL 1362784, at *10 (E.D.N.Y. May 15, 2009) ("Requests for documents subpoenaed by the grand jury evoke 'different [ ] and less exacting considerations' than requests for grand jury transcripts."); *In re Grand Jury Matter*, 682 F.2d 61, 64 (3d Cir. 1982) (ruling that "information developed by the FBI, although perhaps developed with an eye toward ultimate use in a grand jury proceeding, exists apart from and was developed independently of grand jury processes" and thus "falls outside of [Fed. R. Crim. P.] 6(e)").

### B. The Court Should Reject Defendants' and the Third Party Law Firms' Objections to Plaintiffs' Discovery Requests

Defendants objected to Plaintiffs' October 19, 2019 requests for production on the grounds that (i) they do not have possession of the documents the Third Party Law Firms are storing, (ii) the documents Plaintiffs seek are privileged or attorney work product, and (iii) any production should be postponed while the Third-Party Law Firm's objections to this discovery are pending. *See* Ex. A (Letter from R. Rosberger to C. Henry) ("You ... indicate that any responsive documents possessed by the criminal law firms that represented defendants Noah Siegel, Nicholas Hirsch, and Jonathan Hirsch should be produced. We do not agree with this request."). First, the documents Plaintiffs' seek are in Defendants' control because Defendants have "the legal right to obtain the documents on demand." *In re Bank of Cyprus Pub. Co. Ltd.*, No. 10-misc-23, 2011 WL 223168, at *3 n.1 (S.D.N.Y. Jan. 21, 2011); *see also CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13-cv-2581 (PKC) (JLC), 2019 WL 3334503, at *17 (S.D.N.Y. July 25, 2019) ("Courts in this district have held that documents held by outside counsel are in the possession, custody, and control of their clients."). Second, Plaintiffs seek the criminal files the Government provided to Defendants. That information cannot be privileged or attorney work product. Third, the Hon. Judge Torres, presiding over the Civil Case, already ordered that discovery will not be postponed pending the resolution of other disputes and motions. *See* Civil Case, D.I. 30 at 1 ("The Court will not stay discovery pending its decision on any motion.").

Mintz argues that there is no basis for Plaintiffs' request to use materials from Defendants' criminal files in the Civil Case. *See* Criminal Case, D.I. 1369 at 4. But Mintz's cases are inapposite or support *Plaintiffs'* request for relief. For example, in *Nat'l Broadcasting Co. v. U.S. Dep't of Justice*, the Second Circuit recognized "private civil RICO suits"—such as the Civil Case—as one of the "situations where release [of surveillance materials] would be compatible with the purposes of Title III." 735 F.2d 51, 54-55 (2d Cir. 1984). And *United States v. Dorfman* addressed *public* dissemination of wiretap materials. 690 F.2d 1230, 1233 (7th Cir. 1982). Plaintiffs are not seeking to publicly disseminate materials from the Defendants' criminal files. As noted, Plaintiffs seek such information for the legitimate purpose of furthering their civil RICO claims, and they will treat information produced by Defendants and the Third-Party Law Firms under the highest level of protection afforded by the protective order in the Civil case.

Mintz also contends that productions of the Defendants' criminal files should not be ordered because the validity of wiretap authorizations in Defendants' criminal cases was not fully litigated. *See* Criminal Case, D.I. 1369 at 4. Mintz relies on *Securities Exchange Commission v.*

LATHAM&WATKINS<sup>LLP</sup>

*Rajaratnam*, but in that case an order to produce wiretap materials was vacated because the validity of the wiretap authorization was being actively litigated. *See* 622 F.3d 159, 186-87 (2d Cir. 2013). Here, Defendants Siegel, J. Hirsch, and N. Hirsch gave up the right to litigate the legality of the Government's evidence when they pled guilty:

> The Court: But there will be no trial and there will be no appeal with respect to whether the government could or could not use the evidence that it has against you or with respect to whether you did or did not commit the offense charged in Count Ten of the indictment.
>
> Do you understand all of that?
>
> The Defendant: Yes.

Criminal Case, D.I. 528 at 10 (Defendant Siegel), D.I. 447, at 9 (Defendant N. Hirsch), D.I. 508, at 9 (Defendant J. Hirsch).

Mintz also incorrectly asserts that a purported absence of an "information disadvantage" favors denying the relief Plaintiffs seek. The scope of discovery in the Civil Case is "any matter relevant to a party's claim or defense," not what is necessary to balance an "information disadvantage." Fed. R. Civ. P. 26(b)(1); *see also Joseph v. Gnutti Carlo S.P.A.*, No. 15-cv-8910 (AJN), 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016) ("[R]elevance, for purposes of discovery, is an extremely broad concept."). And Mintz is wrong that there is no "information disadvantage." As discussed, Defendants have control over their criminal files—regardless of whether they currently have possession of those files, *see CBF Industria de Gusa S/A*, 2019 WL 3334503 at *17—but Defendants refuse to produce those documents. *See* Ex. A (Letter from R. Rosberger to C. Henry).

The Third-Party Law Firms also assert objections to the Subpoenas based on (i) insufficient time to produce the documents requested, (ii) undue burden, (iii) relevance, and (iv) privilege. *See* Civil Case, D.I. 53 (Alston objections), D.I. 56-4, 56-8 (Steptoe objections), D.I. 56-9 (Mintz Objections). The Third-Party Law Firms state that even if the Court grants relief from the Criminal Protective Order, they will not waive these objections. But the Third-Party Law Firms' unspecific, boilerplate objections are misplaced. *See, e.g., Fischer v. Forrest*, No. 14-cv-1304 (PAE) (AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) (holding generalized objections on the basis of "non-relevance to the 'subject matter of this litigation' violate the Rules"). First, Plaintiffs' Subpoenas requested compliance within 14 days, which is proper under Fed. R. Civ. P. 45(d)(2)(B). Plaintiffs had to move swiftly when they served the Subpoenas because, at that time, fact discovery in the Civil Case was set to close on February 13, 2020. Civil Case, D.I. 30, ¶ 5.[2] Second, the Third-Party Law Firms have confirmed that they are aware of the location of the documents Plaintiffs seek, which belies any assertion of undue burden. Third, for reasons explained above, the documents sought are relevant to Plaintiffs' claims in the Civil Case. Fourth, Plaintiffs do not seek privileged information. Indeed, the information sought—information produced by the Government to the criminal Defendants—cannot be privileged. And if by chance, privileged materials do exist in the Defendants' criminal files, the Third-Party Law Firms (or the Defendants) can withhold and log such information, as appropriate.

---

[2] Fact discovery in the Civil Case now closes on April 28, 2020, Civil Case, D.I. 69, so the Third-Party Law Firms have ample time to respond to the Subpoenas.

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order requiring Defendants and the Third-Party Law Firms to produce the documents requested by Plaintiffs' October 9, 2019 Requests for Production Nos. 20-22 and Plaintiffs' December 17, 2019 Subpoenas.

Respectfully submitted,

*/s/ Maximilian A. Grant*
Maximilian A. Grant
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
Tel: (212) 906-1200
max.grant@lw.com

cc:  rrosberger@rlrpclaw.com (via email)
grenigar@steptoe.com (via email)
john.cambria@alston.com (via email)
SARader@mintz.com (via email)

To the extent that Latchable, Inc., Local Energy Technologies, LLC, Luke Schoenfelder, and Brian Jones (collectively, the "Civil Plaintiffs") seek relief from the Protective Order to allow for production of Title III materials in their civil case, their motion is denied, substantially for the reasons set forth in the Government's opposition. See ECF No. 1377. To the extent that the motion concerns non-Title III materials and information, the motion does not (as the Government acknowledges, see id. at 6 n.5) implicate this Court's Protective Order and should therefore be litigated in the context of the civil case. The Government can presumably intervene in that case to protect its interests. Alternatively, if the Government believes that this Court should enter a protective order covering any non-Title III materials, see id., it may file a motion to that effect. Any such motion shall be served electronically on counsel to the Civil Plaintiffs. Any opposition to such a motion, by the Civil Plaintiffs or any Defendant in this case, would be due within one week of the motion being made.

SO ORDERED.

February 20, 2020