

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 20, 2020

BY CM/ECF

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Foley Square, Room 2202
New York, New York 10007

Re:     United States v. Alimzhan Tokhtakhounov, et al., 13 Cr. 268 (JMF)

Dear Judge Furman:

        The Government writes to request that the Court enter the attached supplemental protective order.

        Federal Rule of Criminal Procedure 16(d)(1) provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The Rule "authorizes the district court to limit or otherwise regulate discovery had pursuant to the Rule." *United States* v. *Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991). In determining whether "good cause" exists to implement a protective order, courts look to whether the party seeking a protective order has shown that "'disclosure will result in a clearly defined, specific and serious injury.'" *United States* v. *Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013) (quoting *In re Terrorist Attacks on September 11, 2011*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006)). "In cases of unusual scope and complexity . . . broad protection during the pretrial stages of litigation may be warranted without a highly particularized finding of good cause." *Id.*

        The Protective Order originally entered in this case, on the consent of the parties, only covered Title III materials. Specifically, it provided: "With the exception of otherwise publicly available documents and information, any and all Title Three materials, including, but not limited to, applications, affidavits, orders, reports, line sheets, tape recordings, and transcripts, provided to any defendant pursuant to Federal Rule of Criminal Procedure 16, Title 18, United States Code, Section 3500, *Brady* v. *Maryland*, 373 U.S. 83 (1963) or *United States* v. *Giglio*, 405 U.S. 150 (1983), are deemed confidential ('Confidential Information')." (Dkt. 203 ¶ 1). As noted in the Government's February 12, 2020 letter to the Court, the discovery that the Government produced to the defendants in this matter included not just Title III materials but, as is typical in such large-scale organized crime investigations, a wide variety of documents and information, including, but not limited to: (a) emails, the contents of cellphones, documents, and other evidence obtained pursuant to judicially authorized search warrants; (b) bank and other account records obtained pursuant to grand jury subpoenas; (c) tax records; and (d) certain defendants' post-arrest statements (collectively the "Non-Title III materials"). Thus, as the Government has acknowledged, the Protective Order does not currently cover such non-Title III materials.

The Government respectfully requests that the Court enter the attached supplemental protective order, which makes clear that all materials produced to the defendants, not just Title III materials, are designated as Confidential Information.[1] Such a modification would be consistent with protective orders that the Government typically requests in criminal cases and that allow the Government to satisfy its disclosure obligations without impairing law enforcement interests. *See United States* v. *Epstein*, 1998 WL 67676, at *1 (S.D.N.Y. Feb. 19, 1998) ("confidentiality orders are intended 'to secure the just, speedy, and inexpensive determination' of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant.'" (quoting *Martindell* v. *ITT Corp.*, 594 F.2d 291, 295 (2d Cir. 1979))). The Government does not presently recall why the Protective Order in this case was limited to Title III materials. Nonetheless, in light of civil plaintiffs' efforts in *Latchable, Inc. et al.* v. *Steiner et al.*, 19 Civ. 7575 (AT) (the "Civil Case"), to gain complete access to all of the non-Title III materials produced to the defendants, the Government respectfully submits that this supplemental protective order is appropriate.

The Government recognizes that its request follows, by a number of years, its production of discovery to the defendants. Rule 16(d)(1), however, specifically provides that a Court may enter a protective order "[a]t any time." The Government also submits that there is plainly "good cause" for this supplemental protective order. The civil plaintiffs seek wholesale access to the non-Title III materials that the Government produced. Absent a supplemental order designating all discovery materials as Confidential Information, the Government risks real and substantial injury by the potential disclosure of these materials in the Civil Case. *See* Fed. R. Crim. P. 16(d)(1); *United States* v. *Amodeo*, 71 F.3d 1044, 1048-50 (2d Cir. 1995) (qualified right of access may yield to, among other things, the "privacy interests of innocent third parties" and "the danger of impairing law enforcement."); *Smith*, 985 F. Supp. 2d at 547 (granting Government's motion for a protective order to protect similar interests).

Because the Government's prosecution of the lead defendant Alimzhan Tokhtakhounov is ongoing, a supplemental protective order is necessary to protect the integrity of the investigation. Tokhtakhounov is a fugitive presently living in Russia. The Government has been seeking his arrest since his indictment in this case in 2013. Indeed, as part of the State Department's Transnational Organized Crime Rewards Program, a reward of up to $4 million is currently be offered for information leading to his arrest and/or conviction. *See* https://www.state.gov/inl-rewards-program/transnational-organized-crime-rewards-program/alimzhan-tokhtakhounov/. Given that the Government's prosecution of this case remains ongoing, protection of the Government's discovery is necessary to avoid revealing the details of the investigation to Tokhtakhounov or his associates. It is also necessary to protect potential witnesses. As the Court may recall from the sentencings of co-conspirators Vadim Trincher and Anatoly Golubchik, Tokhtakounov used his status as a Vor or thief-in-law — a select group of the

---

[1] The draft supplemental protective order amend the first sentence of Paragraph 1 of the Protective Order as follows: "With the exception of otherwise publicly available documents and information, any and all materials, including documents and the information contained therein, electronic data, other audio or visual materials that are or have been provided by the Government to any defendant pursuant to Federal Rule of Criminal Procedure 16, Title 18, United States Code, Section 3500, Brady v. Maryland, 373 U.S. 83 (1963) or United States v. Giglio, 405 U.S. 150 (1983) are deemed confidential ('Confidential Information')."

highest-level criminals in the former Soviet Union — to help collect gambling debts owed to the enterprise, including by violence or threats of violence. (*E.g.*, Dkt. 866, at 8-9). *See* Fed. R. Crim. P. 16 advisory committee notes (1966) ("Among the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger or perjury or witness intimidation."); Fed. R. Crim. P. 16 advisory committee notes (1974) ("Although the rule does not attempt to indicate when a protective order should be entered, it is obvious that one would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed.").

In their February 14, 2020 reply brief, the civil plaintiff argue that the Government's concerns can be addressed by a protective order in the civil litigation. (Feb. 14, 2020 Reply 4). This argument should be rejected. If the civil plaintiffs were correct, then any party to a civil litigation could argue that a protective order in their case would mitigate, and trump, any Government concern about the integrity of its investigations and prosecutions. As with any protective order, there is always the real possibility that documents and information produced under it will become public, including during hearings and trial. Such a risk of disclosure could substantially undermine the Government's ongoing prosecution of Tokhtakounov. The civil plaintiffs also ignore that the Government charged thirty-four individuals, and the bulk of the non-Title III materials is irrelevant to Siegel and the Hirschs.

In their reply brief, the civil plaintiffs now hint at their interest only in the defendants' own documents. (Feb. 14, 2020 Reply 2) ("The Government ignores this and fails to explain why the production of Defendants' emails, bank records, tax returns, cell phone contents, and statements would reveal what transpired in the grand jury room. It would not."). However, as currently styled, the civil plaintiffs seek all of the non-Title III materials and have made no showing of their efforts to obtain the defendants' own documents in the civil litigation. Whether the civil plaintiffs' may ultimately be entitled to certain materials produced by the Government — which the Government does not concede — should be a question for this Court, which has familiarity with the facts and procedural history of the Criminal Case. *See also Index Fund* v. *Hagopian*, 512 F. Supp. 1122, 1131 (S.D.N.Y. 1981) (denying Rule 6(e) motion by party to private litigation where movants failed to show "particularized need" for grand jury materials); *United States* v. *Randell*, 924 F. Supp. 557, 559 (S.D.N.Y. 1996) (denying Rule 6(e) motion seeking agent's reports).

Accordingly, the Court should enter the attached supplemental protective order.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:  ____/s/_____
Joshua A. Naftalis
Assistant United States Attorney
(212) 637-2310

cc:     All Counsel in Criminal Case (via CM/ECF)
        Maximilian A. Grant (via email)
        Richard Rosberger, Esq. (via email)
        Gwendolyn Renigar, Esq. (via email)
        John Cambria, Esq. (via email)
        Scott Rader, Esq. (via email)

Application DENIED. The Government seems to have abandoned any argument that disclosure of the requested materials would run afoul of Rule 6(e) of the Federal Rules of Criminal Procedure. To the extent that it has not abandoned the argument, the Government has not made a showing that the materials at issue are protected by the Rule, substantially for the reasons set forth in the Civil Plaintiffs' letter of February 27, 2020. *See* ECF No. 1381. As for Rule 16(d)(1), the Government bears the burden of showing "good cause," which "is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (internal quotation marks omitted). The Government fails to carry this burden. For one thing, the Government's claim that there is good cause to broaden the protective order is undermined by the fact that it did not seek such an order at the time of disclosure (when Alimzhan Tokhtakhounov was already a fugitive), let alone in the nearly seven years since then. Separate and apart from that, the Government has not shown, let alone "with specificity," that disclosure of the limited materials sought by the Civil Plaintiffs — namely, "non-Title III materials relating to Defendants Siegel, N. Hirsch, and J. Hirsch," ECF No. 1381, at 7 — would harm the "integrity of the investigation" into Tokhtakhounov (who, to the Court's knowledge was not directly connected to Defendants Siegel, N. Hirsch, and J. Hirsch) or put "potential witnesses" at risk, *supra* at 2, particularly since the materials would be subject to the protective order in the civil litigation. *See* 19-CV-7575, ECF No. 91. In short, based on the Court's understanding that the Civil Plaintiffs seek only "non-Title III materials relating to Defendants Siegel, N. Hirsch, and J. Hirsch" and that such materials would be designated as "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" within the meaning of the protective order in the civil case, the Government's motion is DENIED.

The Clerk of Court is directed to terminate ECF Nos. 1374 and 1379.

        SO ORDERED.

        March 3, 2020